[Crim. No. 1095. First Appellate District, Division One.—March 24, 1923.]

## THE PEOPLE, Respondent, v. PASQUALE CAIAZZA et al., Appellants.

[1] CRIMINAL LAW—ENTRAPMENT—ORIGIN OF CRIMINAL DESIGN.—If the criminal design charged originated with the perpetrators of the act they cannot escape conviction merely by reason of the fact that a trap was laid for them or that they were facilitated in the execution of their enterprise by officers of the law who acted for the purpose of detecting them in the perpetration of their unlawful act.

[2] ID.—CONSPIRACY TO BURN INSURED PROPERTY—RECOMMENDATION OF LENIENCY — REMARK OF TRIAL JUDGE. — In a prosecution for conspiracy to burn certain insured property with intent to defraud and injure the insurer and also the owner thereof, it cannot be said that the trial judge prejudicially misled the jury as to its authority where, in response to a question by the foreman of jury as to whether it was in the power of its members to recommend leniency, the trial judge informed the jury that it might make any recommendation it saw fit, but there being no intimation that by incorporating in their verdict a recommendation of leniency the punishment would be reduced.

[3] ID.—AUTHORITY OF JURY TO MAKE RECOMMENDATIONS.—In the absence of a statute a jury has no right or authority to accompany a verdict with a recommendation, their province being solely to determine the guilt or innocence of the accused.

---

1. Entrapment to commit crime with view of prosecution therefor, notes, 18 A. L. R. 146; 25 L. R. A. 341; 51 L. R. A. (N. S.) 829.

3. Recommendation of mercy in criminal case, note, 17 A. L. R. 1117.

[4] ID.—CHARACTER OF ACCUSED—INSTRUCTIONS.—In a prosecution for
conspiracy to burn certain insured property with intent to defraud
and injure the insurer and also the owner thereof, the character
of the accused, whether good or bad, is not involved; therefore, the
refusal of the court to give a requested instruction concerning his
good character cannot affect his substantial rights.

[5] ID.—CONSPIRACY—KNOWLEDGE THAT PROPERTY INSURED—EVIDENCE.
In a prosecution for conspiracy to burn certain insured property
with intent to defraud and injure the insurer and also the owner
thereof, where the evidence to establish the confederation or con-
spiracy is complete, evidence showing that one of the conspirators
knew that the property was insured is competent evidence against
the others.

APPEAL from a judgment of the Superior Court of
Fresno County and from an order denying a motion for a
new trial. J. E. Woolley, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas F. Lopez, M. F. McCormick and C. M. Ozias for
Appellants.

U. S. Webb, Attorney-General, and John H. Riordan,
Deputy Attorney-General, for Respondent.

TYLER, P. J.—Appellants, together with one Diego
Failla, were jointly indicted for the crime of conspiracy to
burn certain insured property with intent to defraud and
injure the insurer and also the owner thereof. Appellants
were both convicted and Failla was acquitted. This is an
appeal from the judgment and from an order denying the
motion of said appellants for a new trial.

At the outset it may be stated that it is conceded that
neither of the defendants is a man of integrity; that they
had an evil purpose and entertained an unlawful and wicked
design to join with the owner of the property in what they
believed to be a plot to commit arson, a crime that is
viewed by the law as a heinous and most aggravated offense,
for the reason that it endangers human life and the security
of habitations and evidences moral recklessness and de-
pravity in the perpetrator.

It is contended, however, that notwithstanding the ad-
mitted evil intent and purpose of the defendants the judg-

ment of conviction can only be upheld by the strong hand of power, and not by or under the law. In this connection it is urged that the verdict is against public policy, which should always estop the state from devising a scheme to encouarge or aid one in the commission of a crime. The verdict is therefore assailed for the reason that the evidence is insufficient to convict defendants, it being claimed that it only shows that they were pliant and willing instruments who could be and were instigated and impelled to commit the crime in question by public officials and decoys employed by the state for such purpose, and that they never would have committed the crime with which they are charged but for such assistance and co-operation on the part of such officials. In other words, defendants invoke the defense of instigation and entrapment.

This subject has received full and careful consideration by the district court of appeal for the third district in the very recent case of *People* v. *Rodriguez, ante,* p. 69 [214 Pac. 452]. (See, also, *People* v. *Silbelo, ante,* p. 92 [214 Pac. 462]. [1] In the Rodriguez case a collation of the authorities is made and the subject fully reviewed, and the conclusion in substance is there reached that if the criminal design charged originated with the perpetrators of the act they cannot escape conviction merely by reason of the fact that a trap was laid for them or that they were facilitated in the execution of their enterprise by officers of the law who acted for the purpose of detecting them in the perpetration of their unlawful act. The great weight of authority is in accordance with this view. (See, also, 16 Corpus Juris, p. 88; *People* v. *Barbera,* 29 Cal. App. 604 [157 Pac. 532].)

In support of the judgment of conviction it is claimed that the evidence in this case nowhere warrants the conclusion of appellants that they were the victims of official enticement or instigation, or that they were lured from the path of rectitude by any official or his agent, but that, on the contrary, it does show from the admissions made by them that they were professional arsonists, and that they originated the crime with which they are charged.

The record is voluminous, but briefly and in substance the evidence shows that one Holcomb was the owner of and resided with his family in the dwelling-house in Fresno

which defendants are accused of attempting to burn. Holcomb and his wife were not on friendly terms. She was afflicted with an incurable disease, and Holcomb was desirous of sending her to Germany in order that he might marry someone else, but was not possessed of sufficient funds to do so. A fire had occurred at his home, but it was extinguished before any substantial damage was done. There is evidence in the record which indicates that Holcomb started the fire for the purpose of collecting the insurance in order to carry out his plan of sending his wife abroad. Shortly thereafter Holcomb had a conversation with defendant Caiazza, whom he had known for some eight years, on which occasion this fire was discussed. Caiazza expressed to Holcomb the opinion that it was impossible "to get along without being crooked," and suggested to him that he again burn his home. Holcomb thereafter, according to the testimony of Caiazza, hunted him up and importuned him to procure someone to do the burning. The parties met at the home of Caiazza on Thanksgiving Day of 1921, when the matter of destroying Holcomb's property was discussed in a general way. According to the testimony of Holcomb, Caiazza explained how easy it was to accomplish the burning; that he knew of places which had been burned, and that he could procure a friend of his who made a profession of setting fire to property, to engage in the desired undertaking for the sum of $50. Holcomb thereafter discussed the matter with a friend, who advised him that he had better report the matter to the authorities. Holcomb thereupon informed the fire chief, who in turn took the matter up with other officials of the city of Fresno. A plan was thereupon arranged by the police and fire authorities to have Caiazza and Holcomb meet in the basement of a store where Holcomb was employed and discuss plans for the burning. Caiazza appeared there at Holcomb's request. A dictaphone had in the meantime been installed on the premises, and while the conference between Holcomb and Caiazza was being had the officers secreted themselves so as to hear what was said. The subject of the burning was again discussed by the parties as was also the amount of insurance carried by Holcomb. Caiazza was of the opinion that the burning should be done by a professional but that it should be deferred until such time as Holcomb could procure more

insurance in a company represented by Caiazza, he being in the insurance business. Thereafter preparations were made to carry out the plan. Defendant Giusto was employed to do the actual burning. Holcomb agreed to pay the sum of $350 for the commission of the act. Part of this sum was paid to Caiazza in cash, the balance being made up of promissory notes signed by Holcomb. On the evening of April 19, 1922, Giusto, accompanied by Failla, went to the Holcomb home and they in conjunction with Holcomb prepared the place for burning. They poured gasoline over the premises and spread pieces of sheet saturated therewith throughout the rooms and applied a lighted candle thereto. The officers, who were in hiding on the premises, extinguished the fire and the arrest of defendants followed.

It thus conclusively appears from the evidence that the crime with which the defendants stand charged was originally conceived by Holcomb and Caiazza independent of any suggestion or aid from the officers. There is no question that after the scheme was thus formed Holcomb, for purposes of his own, betrayed Caiazza, and that defendants were thereafter encouraged in the perpetration of their criminal design by the officers. There is a distinction, however, between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal plan of his own conception. This distinction is pointed out in the Rodriguez case, *supra*. Where the doing of a particular act is a crime, regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the criminal offense is completed the fact that an opportunity is furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense (Case and Comment, August, 1922).

Upon this subject, therefore, we conclude that the defense here interposed by appellants is without merit.

It is further claimed that the court erred in refusing to give certain instructions upon the subject of entrapment and participation. The case not being one of official instigation, as has been pointed out, the instructions were properly refused.

[2] Nor is there any merit in the further contention that the court misled the jury during its deliberations. In this

connection it appears from the record that the trial judge was asked by the foreman of the jury if it was in the power of its members to recommend leniency. In reply thereto the jury was informed that it might make any recommendation it saw fit. It is contended that as the law does not authorize or permit any such recommendation the court by so advising the jury prejudicially misled it as to its authority, it being claimed that the remark of the court was in effect an invitation to the jury to do a thing not authorized by law which deceived the members thereof into bringing in the verdict that it did.

The objection is without merit. [3] In the absence of a statute it is the prevailing rule that a jury has no right or authority to accompany a verdict with a recommendation, their province being solely to determine the guilt or innocence of the accused (*People* v. *Lee,* 17 Cal. 76; 17 A. L. R., p. 1156). If the court had led the jury erroneously to suppose that by incorporating in their verdict a recommendation of leniency the punishment would be reduced there might be some merit in the objection. As there was no such intimation on the part of the court of the effect of such recommendation there could be no prejudice. (*People* v. *Lee, supra.*)

[4] It is further claimed on behalf of the defendant Giusto that the court committed error in refusing to give an instruction concerning his good character.

We see no merit in this claim. The nature of the charge and the evidence supporting it rendered such an instruction of little, if any, value to the defendant. The fact of the commission of the crime by him is admitted. His character, therefore, whether good or bad, was not involved, and it could in no manner operate as a factor in his favor. Under such circumstances refusal to give the instruction did not affect his substantial rights.

[5] And, finally, it is claimed that there is no evidence in the record to show that the defendant Giusto knew that the premises he attempted to burn were insured.

There is no merit in this contention. There is evidence to show that he was told by Holcomb to take such personal property as he desired from the premises, and that he did attempt to carry certain articles away with him after setting fire to the premises, which he discarded when the offi-

cers arrested him. This is a circumstance from which knowledge of the fact on his part might properly be inferred. The very offense here charged is a conspiracy to burn the property in question with intent to injure the owner and insurer. The evidence to establish the confederation or conspiracy was complete. Any act, therefore, of either confederate in furtherance of the object and purpose of the confederation is competent evidence against the others. There is an abundance of evidence in the record to show that Caiazza knew the property was insured.

Under all these circumstances the jury was justified in finding that both defendants attempted the crime with which they are charged with intent to defraud the insurer. (*People* v. *Vasalo,* 120 Cal. 168 [52 Pac. 305].)

The judgment is affirmed.

St. Sure, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1923.