[Crim. No. 107. Fourth Appellate District.—October 22, 1931.]

THE PEOPLE, Respondent, v. ODELL MALONE et al., Appellants.

Rowen Irwin and W. C. Dorris for Appellants.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendants were charged with the crime of burglary and tried by a jury. This appeal is from the judgment following a verdict of guilty, and from an order denying a motion for a new trial.

It is admitted that the appellants entered the store of R. J. Wooten in the city of Bakersfield between 11 and 12 o'clock on the night of April 13, 1930, and took therefrom a safe, a number of tires and various other articles of merchandise. The only defense offered at the trial or raised on appeal is that appellants were entrapped into committing the offense by an officer of the law. It appears that for about a month prior to April 13, 1930, one H. C. Stone had been in the employ of the police department of the city of Bakersfield as a special investigator, and that it was his duty to frequent pool-halls and similar places and pick up information about crimes that were contemplated, or that had been committed. It also appears that Stone had conversations with appellants on the afternoon of April 13th, and that the three went to the rear of the Wooten tire shop and looked at the premises. Stone reported to his superior officer that the Wooten place would probably be entered about 11 o'clock that night. Stone owned a Ford truck and it appears that on April 12th, the appellants had asked permission to borrow this truck for use during evenings and nights, which permission was given. During the evening of April 13th the appellants came and got the truck. A number of police officers secreted themselves near the rear of the Wooten store and around 11 o'clock that night the appellants came in the Ford truck, and backed the same up to the rear door of the store. They cut the screen from a window, broke the glass, entered through the window, opened the rear door, and removed and loaded on the truck an iron safe, some tires and various other articles. During all this time Brown had with him a

44-caliber revolver, which was kept cocked. As the appellants started to drive away, the officers appeared and called to them to stop. Instead of stopping, they drove away as rapidly as possible and the officers opened fire. Both of the appellants were injured and the truck stopped a short distance away, due to a flat tire. Both of the appellants got out and ran and shortly thereafter Brown was arrested on the street and Malone was arrested at the home of Stone, where Stone was engaged in dressing his wounds.

■ The first point raised is that the evidence clearly establishes that the appellants were entrapped and that the appellants were induced to commit the crime in question by the police employee Stone. This claim is based entirely on the testimony of the two appellants, to the effect that on the afternoon of the 13th, Stone met them on the street and asked them if they wanted a job; that he told them he wanted them to haul a small safe, some tires and some other things from the Wooten store to another place a few blocks away; that he told them he would pay them $20 apiece for the service; and that he took them down and showed them the place and furnished the truck. This was flatly denied by Stone, who testified that he saw the appellants on the afternoon before the robbery and they told him that they had several places in mind, but that the Wooten place looked easy, and that they took him down and showed him the rear of the premises. He also admitted that when the appellants, on the previous day, asked permission to use his truck evenings, he thought they might use the truck for the purpose of stealing something. John S. Lamberson, a police officer, testified that he had a conversation with Malone at the hospital later on the night of the burglary, and that Malone admitted having robbed the place and said he was going to plead guilty. Nothing was then said about Stone having had anything to do with the burglary. On April 14th, the day after the crime, Malone made a statement which was taken down by a court reporter, in which he stated that no one was with him but Brown and that no one else was mixed up in the crime. He also answered as follows: "Q. When did you first plan it? A. Yesterday. Q. After you got the car? A. No, before we got the car."

It will be observed that the testimony of the appellants is not the ordinary claim of entrapment, that is, that they were

induced to undertake to commit a crime. Their claim is that they thought they were being hired to do some legitimate work, that is, to haul some merchandise. And yet their own story contains some surprising things. They claim they were to receive $20 apiece for this small service. They went to do the work at 11 o'clock at night, and when they found the door locked, they broke in. They testified that Stone had not told them just what property they were to take, that "he didn't mention very many things at all. He told us there was material in there, that he could use it all." So, as they testified, they just "grabbed everything". They admitted that they knew the goods did not belong to their supposed employer. They took a six-shooter with them, which they kept cocked all the time. While this gun was fired when they were attempting to get away, one of them testified that it went off accidentally as they were closing the truck door. They also testified that they did not hear the policemen call to them to stop, and that they had no chance to surrender.

It cannot be held that the evidence clearly established entrapment. No more appears than a conflict in the evidence and at that, the entire story as related by appellants is of such a nature that it is impossible to see how a jury could have believed them. Aside from their testimony that they were hired by Stone to haul some goods, there is no evidence that Stone planned the burglary or had any part in inducing the appellants to take part in it, except the admitted fact that Stone loaned to the appellants the truck which they used. ■ It may be conceded that when an officer induces a person to commit a crime which he would not have done without such inducement, the law will not punish the person so lured into the crime (*People* v. *Tomasovich,* 56 Cal. App. 520 [206 Pac. 119]). But this is true only where the intent originates with the officer and where the defendant is induced to commit a crime which was not contemplated by him (*People* v. *Norcross,* 71 Cal. App. 2 [234 Pac. 438]). Even the furnishing of money with which to purchase liquor has been held not to constitute entrapment (*People* v. *Rodriguez,* 61 Cal. App. 69 [214 Pac. 452]; *People* v. *Caiazza,* 61 Cal. App. 505 [215 Pac. 80]). ■ The loaning of this truck to these appellants, even if the officer knew from his conversation with appellants what

they intended to do with it, was not such an inducement to commit the crime as will relieve the appellants from responsibility (*People* v. *Lanzit,* 70 Cal. App. 498 [233 Pac. 816]). The question whether the intent to commit this crime originated with the officer or with the appellants was a question of fact for the jury, and their verdict finds ample support in the evidence.

■ Appellants assign as error the refusal of the trial court to permit them, during their cross-examination of the witness Stone, to ask him several questions along the line of whether the witness had on the Tuesday night preceding the burglary here in question, taken the defendant Brown over to the rear of 'Abe Reigler's Place'' and shown him how it could be entered, and whether he had told Brown he wanted him to go into the Reigler place for the purpose of removing certain merchandise. While objections to these questions were sustained, the record shows that upon cross-examination and just before these questions were asked, in response to other questions, the witness testified that he had had no conversation with Brown on that Tuesday about the Abe Reigler place and that he had not told him that he could with safety enter the Reigler place through the rear door. These questions having been answered, no prejudicial error appears in refusing to permit practically identical questions to be repeated. ■ Error is also claimed in the refusal of the court to permit the witness Stone to answer a question as to what he or his superior officer had done after he told his superior officer that he knew "this defendant'' had committed a burglary the night before. We see no error in this. It would hardly have been in accordance with the usual practice to have informed this jury whether or not these defendants were being prosecuted or would be prosecuted for a separate and distinct burglary. ■ It is also claimed that the court erred in sustaining objections to certain questions asked of the witness Stone on cross-examination, to the general effect of whether he had not endeavored to prevail upon the appellants to enter a plea of guilty. The appellants did not plead guilty and no question of misleading them is involved. Appellants cite several cases to the effect that evidence is admissible to show the degree of hostility on the part of a witness and the extent of the interest of the witness. If an answer to this question had been allowed

it does not appear how it would have shown any interest or hostility on the part of the witness, nor would it have impeached him in any respect. The appellants took the stand and did not themselves testify or offer to testify as to any such fact. The question seems to have been asked on the theory that Stone had instigated the crime and thereafter sought to shield himself by inducing them to plead guilty. Assuming this evidence to have been admissible for this purpose, since the appellants did not seek to directly establish such facts, and since the other evidence in the case is so overwhelming against the appellants on the question of whether it was Stone or the appellants who first conceived the idea of this crime and who carried it into execution, we cannot hold that the error, if any, is sufficient to justify a reversal.

 The last point raised is that the court erred in refusing a new trial on the ground of newly discovered evidence. Mr. Wooten, owner of the store that was robbed, had testified at the trial that these appellants had been in his place of business about a week before the burglary; testifying that they had been in the front store, which was separated by a partition from the workshop in the rear. On motion for a new trial the affidavit of Mr. Wooten was presented, in which he stated that it was possible that he might have been mistaken about appellant Malone being in the store a week prior to the burglary, that it might have been Malone's brother who was there at that time. It is insisted that the main question before the jury was whether the idea of the robbery originated with Stone or with the appellants; that Wooten's testimony that both of the defendants were in his store the previous week is of the utmost importance; and that this very testimony could well have caused the jury to hold that the idea of the robbery originated at that time and did not originate in the mind of Stone. In the first place, it may be observed that Wooten, while admitting it is possible he was mistaken as to the presence of Malone, does not change his testimony as to the presence of Brown. Since Malone and Brown actually robbed the place together, any observation supposed to have been made at that time would be just as effective if made by Brown alone. While it still appears that at least one of them was there a week before, that fact, together with the fact that whoever was

there was only in the front store, is of small importance compared with the admitted fact that both of the appellants made an examination of the rear of the premises in question the afternoon before the crime was committed. And Malone, in his statement, said they planned it the day before. The important question is whether the appellants conceived the plan to commit this robbery and not whether it was conceived on a particular day. In any event, it fully appears that Brown was there the week before and both of the appellants were there the day before. In our opinion the court did not abuse its discretion in refusing to grant a new trial, and this is especially true in view of the whole record.

We have read the entire transcript and we can hardly see how the jury could have found otherwise than they did. The case is not one of those close ones where small details might seriously affect the conclusion reached by the jury. In our opinion, any errors shown by the record are well within the provisions of section 4½, article VI of the Constitution.

The judgment and order appealed from are affirmed.

Jennings, J., and Marks, J., concurred.