[Crim. No. 3343.   Second Appellate District, Division One.—May 17, 1940.]

THE PEOPLE, Respondent, v. ROBERT L. CHERRY, Appellant.

Leland E. Zeman for Appellant.

Earl Warren, Attorney-General, and L. G. Campbell, Deputy Attorney-General, for Respondent.

WHITE, J.—Appeal by defendant from a judgment of conviction on two counts for the violation of subdivision 3,

section 337a of the Penal Code, which section, generally speaking, denounces as a crime the receiving, holding or forwarding of any bet or wager upon the result, among other things, of any horse race. By appropriate waiver of jury and pursuant to stipulation of the parties, the cause was submitted to the trial judge upon the transcript of testimony taken at the preliminary examination.

There is no dispute as to the facts, which epitomized are that upon the afternoon of February 7, 1940, defendant was engaged at his occupation of clerk and meat cutter in a combination grocery store and market in the city of Los Angeles. A police officer entered the store, purchased from the defendant a package of cigarettes, and inquired as to whether defendant knew where the officer could make a bet, to which the defendant responded that he did not know, but that he had the telephone number of a bookmaker. The officer thereupon said that he would go up the street and see if he could make his bet there, but returned shortly and asked the defendant if the latter would phone in a dollar bet on a particular horse. Thereupon the defendant wrote down upon a piece of paper, ''One dollar to win, Alviso in the third,'' and proceeded to the telephone, where he called in the bet. The officer walked out of the store and returned a few minutes later, when defendant informed him, ''That horse is scratched,'' whereat the officer said, ''Well, make it one dollar to win on The Gob in the fifth race, then.'' Defendant received a one dollar bill from the officer and returned to the telephone, saying, ''Well, one dollar to win on The Gob in the fifth race.'' Thereupon another officer walked up and said to the defendant, ''Give me one dollar to win on Brother Nibs in the third race,'' handing the defendant a dollar bill; and the defendant repeated the bet over the telephone, then turned round and said, ''That horse is scratched, too,'' whereupon the second officer said, ''Well, make it Billie Bane in the third, then, one dollar to win''; which name and race the defendant repeated over the telephone, turned around and said to the officers, ''It is O. K., one on Billie Bane to win in the third.'' At this time the defendant was arrested.

The officers testified that they approached the defendant because of information they had that bets on horse races were being made at the establishment where defendant was em-

ployed; while the defendant, testifying as a witness in his own behalf, said that he had been in the habit of telephoning in bets for his associates and friends, but that he received no commission or compensation therefor. The defendant thus described his method of operation: "Q. When you took this bet, what did you expect to do with the $2 that you took in from these officers? A. Well, the way the procedure always worked, depending on the result of the races that they bet on, this fellow" (referring to a representative of the bookmaker) "would have come by and if the horses had not won, why, he would have collected the $2, and if they had won, he would have given me the winnings for those. Q. And then you would have paid it to these men when they came back after it? A. That was the idea."

The single ground urged by appellant for a reversal is thus stated by him: " . . . that the penal offense of which he stands convicted was conceived, designed and executed by the arresting police officers." In other words, appellant bases his appeal on the ground that he is the innocent victim of an entrapment deliberately planned and carried out by the officers. The theory of appellant would seem to be that it is as much the duty of peace officers to prevent as it is to detect and punish crime, and where officers of the law originate the design to have a crime committed and have by artful means induced another, wholly innocent of criminal intent until by the officers his mind has thus been corrupted, to effect such design, the policy of the law is to condemn rather than encourage convictions thus brought about. It is true that when the criminal intent originates in the mind of the entrapping person, and the accused is lured into the commission of the offense in order to prosecute him, such entrapment will constitute a defense. (*People* v. *Hall*, 133 Cal. App. 40, 45 [23 Pac. (2d) 783].) The rule is thus stated by our Supreme Court in *People* v. *Makovsky*, 3 Cal. (2d) 366, 369 [44 Pac. (2d) 536]):

"It is unquestionably true that decoys may not be used to ensnare the innocent and law-abiding into the commission of crime when the criminal design originates not with the accused but is conceived in the minds of officers, and the accused is by persuasion, deceitful representation or inducement lured into the commission of a criminal act. When an officer in-

duces a person to commit a crime, which he would not have committed without such inducement, the law will not punish the person so lured into the crime. (*People* v. *Malone*, 117 Cal. App. 629 [4 Pac. (2d) 287].) Under such circumstances the government is estopped by sound public policy from prosecuting therefor. The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite and create crime for the sole purpose of prosecuting and punishing it. While decoys may be used to entrap criminals and to present opportunity to one intending to commit a crime, they are not permitted to ensnare the innocent into the commission of a crime when the criminal design originates not with the accused but is conceived in the minds of the officers, and the accused is by persuasion or inducement lured into a criminal act. (*Newman* v. *United States*, 299 Fed. 128; *People* v. *Malone, supra.*)''

However, the facts of the case before us do not bring it within the rule just announced. There is an utter lack of evidence that any persuasion or inducement was offered to appellant to accept the bet, outside of the ordinary conversation that would take place between a willing bettor and a willing stakeholder or bookmaker. In the case of *People* v. *Rucker*, 121 Cal. App. 361, 364 [8 Pac. (2d) 938], the defendant was asked by a police officer to sell the latter morphine in consideration of the payment by the officer of the sum of ten dollars. When the officer asked the defendant for the drug, the latter, evidently not having any, left the officer and went outside, purchased the morphine, and returning, sold it to the officer. Under this state of facts it was held there was no entrapment of the defendant by the officer. (See, also, *People* v. *Barkdoll*, 36 Cal. App. 25 [171 Pac. 440]; *People* v. *Tomasovich*, 56 Cal. App. 520 [171 Pac. 440]; *People* v. *Heusers*, 58 Cal. App. 103 [207 Pac. 908]; *People* v. *Rodriguez*, 61 Cal. App. 69 [214 Pac. 452]; *People* v. *Caiazza*, 61 Cal. App. 505 [215 Pac. 80]; *In re Moore*, 70 Cal. App. 483 [233 Pac. 805]; *People* v. *Harris*, 80 Cal. App. 328 [251 Pac. 823]; *People* v. *Ramirez*, 95 Cal. App. 140 [272 Pac. 608]; *In re Wong Poy*, 113 Cal. App. 677 [298 Pac. 1029].)

Conceding that when an officer induces a person to commit a crime which he would not have done without such inducement, the law will not punish the person so lured into

the crime (*People* v. *Tomasovich, supra*), nevertheless, it is only where the intent originates with the officer and where the defendant is induced to commit a crime which was not contemplated by him, that such enticement or entrapment may be urged as a defense. (*People* v. *Norcross,* 71 Cal. App. 2 [234 Pac. 438].) During the era of prohibition it was consistently held that the furnishing of money with which to purchase liquor did not constitute entrapment. (*People* v. *Rodriguez, supra; People* v. *Caiazza, supra.*) Where, as here, the defendant by his own admissions was engaged habitually in the unlawful business of accepting and placing bets on horse races in violation of the law, as the officers appeared to have probable cause for believing, then it cannot be said that appellant's purpose to commit the crime was the result of anything that the officers did or said. The rule in this regard is thus set forth in *State* v. *Spiker,* 88 Kan. 644 [129 Pac. 195] : ''The fact that purchases were made by persons seeking to ascertain if appellant was engaged in the unlawful sale of intoxicating liquors constitutes no defense to the charge, nor does it render the testimony incompetent.'' In 16 Corpus Juris, pages 88, 89, we find the following:

''While it has been said that the practice of entrapping persons into crime for the purpose of instituting criminal prosecutions is to be deplored, and while instigation, as distinguished from mere entrapment, has often been condemned and has sometimes been held to prevent the act from being criminal or punishable, the general rule is that it is no defense to the perpetrator of a crime that facilities for its commission were purposely placed in his way, or that the criminal act was done at the 'decoy solicitation' of persons seeking to expose the criminal, or that detectives feigning complicity in the act were present and apparently assisting in its commission. *Especially is this true in that class of cases where the offense is one of a kind habitually committed, and the solicitation merely furnishes evidence of a course of conduct.* Mere deception by the detective will not shield defendant, if the offense was committed by him free from the influence or the instigation of the detective.'' (Italics added.)

The situation presented in the case at bar may be summarized by saying that the defendant was in his own mind ready to commit the crime, and it was only the opportunity

so to do that was suggested by the officer. This does not constitute entrapment as understood by the law.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.