[Crim. No. 2891.   First Dist., Div. One.   Aug. 4, 1953.]

THE PEOPLE, Respondent, v. LOUIS BRANCH, Appellant.

George E. McDonald and James C. Calkins for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

PETERS, P. J.—By an information containing three counts defendant was charged with three violations of section 11500 of the Health and Safety Code, and with a prior conviction and service of a term of imprisonment, for assault and robbery in Louisiana. The first count charged possession of marihuana, and the third with an offer to sell marihuana, both events being charged as having occurred on November 28, 1951. The second count charged defendant with furnishing marihuana on November 25, 1951. Defendant admitted the prior and pleaded not guilty to the other charges. He was found guilty of the charges contained in the first and third counts, and not guilty of the charge contained in the second count. Sentences upon the two guilty counts were made to run concurrently. Defendant appeals from the judgment and from the order denying his motion for a new trial.

The facts are as follows: Appellant was arrested by officers Taylor and Ingram, and Sergeant Plummer, of the narcotics detail of the Oakland Police Department, late on the night of November 28, 1951. One or another of the arresting officers testified that earlier that night, pursuant to a narcotics complaint, they had searched the apartment of Velder Feris Collier, more commonly known as Belle Collier, for narcotics. They discovered only minute particles, too small to use as evidence, of what they presumed to be marihuana. The officers then asked Belle if she could get a "can" or "tin" of marihuana. Belle's testimony at the preliminary examination (read into the record of the present trial without objection because she had died prior to the trial) was to the effect that Officer Taylor told her to get a "can," but did not tell her where to get it or from whom, and that she promised to try. In some way not disclosed by the record, Taylor found a telephone number, which turned out to be the telephone number of appellant, although Taylor did not then know that fact. Taylor dialed that number and then handed the receiver to Belle, but stood where he could hear both ends of the telephone conversation. A man answered the phone, and Taylor testified that he immediately recognized the voice of appellant. Belle asked appellant "Can I get a tin?" (The evidence shows that in the language of the underworld a "tin" is one ounce of marihuana.) Appellant replied "Yes," whereupon Belle stated that she would come right over. Appellant admitted receiving a telephone call from Belle, but claimed that she had telephoned about the purchase from him of a rug, and that she had made two earlier telephone calls that same day and discussed the rug with him. While Belle confirmed the fact that she had made the prior calls and discussed the rug with appellant, she confirmed Taylor's version of the later conversation. These conflicts were for the jury.

Taylor, confirmed by Belle, testified that, after the telephone call had been completed, he gave Belle $15 in marked bills, and that then he, and the other officers, drove Belle to a spot near to appellant's apartment. Belle went into the apartment, and the officers parked nearby. About 20 minutes later the officers approached appellant's apartment and, through a tear in a window shade, were able to see into appellant's living room. They saw Belle and appellant sitting on a couch. Appellant had a brown bag in one hand and was pulling out some of the contents with the other. The officers immediately broke into the apartment.

Belle testified that when she arrived at the apartment she asked appellant for her "tin," and that he replied that he would go get it for her; that she then handed him the marked bills; that appellant then left the house and returned in a couple of minutes with a brown bag containing the marihuana; that he did not give the bag to her, but suggested that they "roll a few" marihuana cigarettes; that appellant then sent his brother-in-law, Waymond Johnson, a soldier and a minor, who was then in the apartment, to the store to get some cigarette papers; that upon Johnson's return appellant and Belle sat on the couch getting ready to roll some cigarettes; that at this point the officers broke in.

The officers forced their way into the apartment, this maneuver taking between five and ten seconds. Taylor testified that he rushed through the living room into the bathroom, the door to which was open, and found Johnson and appellant there and the toilet flushing. He was able to remove from the toilet bowl a brown paper bag containing green vegetable matter, which, upon examination by the state chemist, was determined to be 437 grams or one ounce of marihuana. The marked bills given by Taylor to Belle were found on the person of appellant. Belle testified that when the police broke in she saw appellant run toward the bathroom with the paper bag in his hand.

Johnson, the brother-in-law of appellant, gave (prior to trial because he was about to be and subsequently was transferred from San Francisco by the Army) some rather equivocal testimony to the effect that on or about November 25, 1951, appellant had furnished him with marihuana. Appellant was acquitted of the offense based on this evidence.

Appellant testified that he did not know there was marihuana in the house until the officers pulled it out of the toilet bowl; that Belle "framed" him; that Belle called about the rug and never discussed narcotics with him; that the money Belle paid him was for the rug; that he had not sent Johnson to the store to buy cigarette papers, but he was sent to buy some barbecue; that barbecue was what was in the bag observed by the officers when they saw him with the brown bag on the couch. Johnson agreed with appellant that some barbecue was in the house that night, but testified that it was all consumed in the kitchen and was not taken into the living room. He also testified that, just prior to the raid, he saw appellant and Belle on the couch with cigarette papers

between them, rubbing the material in the bag between their hands.

The appellant's first major contention is that such evidence discloses an illegal entrapment by the police officers, and hence necessitates a reversal. ■ Of course the law will not permit law enforcement officials to entice the innocent to commit a crime that would not otherwise have been committed, but the cases are legion to the effect that the use by law enforcement officers of a decoy will not compel a holding, as a matter of law, of entrapment, even when the decoy encourages or aids in the commission of the offense, as long as there was a preexisting criminal intent in the mind of the wrongdoer. ■ In other words, merely allowing a willing seller an opportunity to make an illegal sale is insufficient to compel a finding of entrapment. (*People* v. *Grijalva*, 48 Cal.App.2d 690 [121 P.2d 32] ; *People* v. *Lee*, 9 Cal.App.2d 99 [48 P.2d 1003] ; *In re Wong Poy*, 113 Cal.App. 677 [298 P. 1029] ; *People* v. *Ramirez*, 95 Cal.App. 140 [272 P. 608].)

■ The proper rule was stated as follows in *People* v. *Schwartz*, 109 Cal.App.2d 450, 455 [240 P.2d 1024] : ''There is ample testimony in the evidentiary narrative hereinbefore set forth to justify the jury in concluding that appellant was a willing seller of narcotics, and his conviction is not vitiated merely because enforcement officers or their agent became the willing buyer and merely created the opportunity for appellant to ply his trade (*People* v. *Cherry*, 39 Cal.App.2d 149, 152, 154 [102 P.2d 546]). It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment.'' (See, also, *People* v. *Roberts*, 40 Cal. 2d 483 [254 P.2d 501] ; *People* v. *Lagomarsino*, 97 Cal.App.2d 92 [217 P.2d 124] ; *People* v. *Lindsey*, 91 Cal.App.2d 914 [205 P.2d 1114].)

It has been held, on facts similar to those here involved, that such evidence, as a matter of law, was insufficient upon which to predicate a request for an entrapment instruction, and that, in such a case, it was not error to refuse to give such proffered instruction. (*People* v. *Johnson*, 99 Cal.App.2d 559 [222 P.2d 58] ; *People* v. *Harris*, 80 Cal.App. 328 [251 P. 823].) Regardless of this rule, however, in the instant case the question of entrapment was, at most, one of fact, and the

implied finding of nonentrapment is amply supported. (*People* v. *Finkelstin*, 98 Cal.App.2d 545 [220 P.2d 934]; *People* v. *Malone*, 117 Cal.App. 629 [4 P.2d 287].)

■ In the instant case, even if instructions on the subject should have been given, we must conclusively presume that such instructions were given because' the appellant has not seen fit to include in the record any of the instructions given or refused. ■ Moreover, even when entrapment is a question of fact, such defense must be raised in the trial court by the offer of an instruction on the subject or otherwise, and cannot be raised for the first time on appeal. (*People* v. *Ryan*, 103 Cal.App.2d 904 [230 P.2d 359]; *People* v. *Schwartz*, 109 Cal.App.2d 450 [240 P.2d 1024].) Without the instructions in the record appellant has failed to sustain his burden.

■ Appellant next challenges the sufficiency of the evidence in various respects. The evidence is sufficient to show possession of and sale of the marihuana by appellant.

■ It is next urged that appellant was charged and held to answer at the preliminary hearing on but two charged counts, but that the information added the offering to sell count as a third count. He also claims that his then attorney was guilty of misconduct in failing to object to this procedure. The merits of these charges cannot be considered for the reason that there is nothing in the record to support them. Moreover, there is nothing in the record to show that a motion was made in the court below to set aside the information or to delete the claimed added count. Such motion is a condition precedent to later raising the point. (*People* v. *Ahern*, 113 Cal.App.2d 746 [249 P.2d 63]; *People* v. *Reimringer*, 116 Cal.App.2d 332 [252 P.2d 756].)

■ There is one last point that must be considered, and that is whether appellant has been improperly convicted of two offenses—possession and sale—when, in fact, the possession was incidental to the sale. Appellant did not raise this point in his briefs, but the point was suggested, with commendable objectivity, by the attorney general because of the opinion of the Supreme Court in *People* v. *Roberts*, 40 Cal.2d 483 [254 P.2d 501]. In that case it was held that, where the possession and transportation of a narcotic were incidental to a sale of the same, separate convictions for the possession and transportation could not be had. The case is based upon the interpretation of section 654 of the Penal Code as made by the Supreme Court in *People* v. *Knowles*, 35 Cal.2d 175 [217 P.2d 1], and *People* v. *Kehoe*, 33 Cal.2d 711 [204 P.2d 321]. (See, also, *People* v. *Logan*, 41 Cal.2d 279 [260 P.2d 20]; *People*

v. *Greer,* 30 Cal.2d 589 [184 P.2d 512] ; *People* v. *Clemett,* 208 Cal. 142 [280 P. 681].) That code section embodies a rule of law somewhat broader than the double jeopardy rule and its corollary of included offenses. It provides that ''An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one.'' Under the rule of this section, as interpreted by the Supreme Court, a single criminal act, whether it gives rise to included offenses or not, can only be punished once. By this section, it is indispensable in order to impose separate punishments that there be evidence of separate and divisible acts that are not incidental to each other. In determining this question the courts have refused to dissect the evidence minutely in an attempt to find separate offenses, but, on the contrary, have held that a broad transactional approach should be made. The evidence in the instant case, so viewed, shows that the possession of appellant of the marihuana was incidental to its sale or offer to sell to Belle. For that reason but one offense is involved.

The attorney general seeks to avoid the effects of this error by pointing out that, since the sentences on the two counts have been made to run concurrently, no possible prejudice can result from the judgment. This is an unrealistic approach. The dual judgment may very well adversely affect appellant's rights when he comes before the proper authorities to have his definite term fixed. This factor was sufficient to require a reversal in *People* v. *Kehoe,* 33 Cal.2d 711 [204 P.2d 321] ; *People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501] ; *People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1] ; *People* v. *Craig,* 17 Cal.2d 453 [110 P.2d 403].

For the above reasons the judgment is affirmed as to count three involving the charge of an offer to sell a narcotic, reversed as to count one involving a charge of unlawful possession, and the order denying a new trial is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.