MILTON GONZÁLEZ ZAYAS, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, GERARDO CARREIRA MÁS, JUDGE, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. O-70-105.    Decided October 8, 1971.

*Luis A. Maldonado Soto* for petitioner. *Gilberto Gierbolini, Solicitor General,* and *Candita R. Orlandi, Assistant Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Milton González appeared at the Carolina Part of the District Court for the purpose of serving as surety for two persons charged with offenses and whose bail had been fixed at $1,000 for each one of five counts. To achieve his purpose he simulated being Juan Reyes Torres and with that name signed and swore to the bails required, in which he stated that he was the owner of a real property, all of it being false.

When the falsehood was discovered, five complaints were sworn to by agent Negrón Ramos of the Police Criminal Investigation Corps against Milton González, on July 3, 1969, for false pretenses before the Carolina Part of the District Court.[1] On the following September 24 he pleaded guilty of

---

[1] One of the five complaints is copied hereinafter:

"Said defendant Milton González Zayas, then and there, unlawfully, willfully, maliciously, knowingly and with criminal intent of defrauding, as in effect he defrauded, under false and fraudulent pretenses, the District Court of Carolina at the afore-indicated date, time, and place in an Order of Bail, with the intention of bailing Pedro Pérez Pérez, who had been charged under § 419 of the Penal Code of Puerto Rico on January 22, 1969, with a $1,000 bail bond, and he did it simulating to be and passing as Juan Reyes Torres and under such usurped character, requested, obtained, and posted the indicated bail, defrauding in this manner the District Court of Carolina."

the five counts. The District Court imposed a fine on him of $1,000, $200 on each count or 90 days in jail. He satisfied the fines imposed. On October 16, 1969, the San Juan prosecuting attorney filed an information against Milton González for five offenses of perjury which he joined in one sole preferment of charges.[2] On the back of the information an agent of the Puerto Rico Police Investigation Corps appears as one of the witnesses for the prosecution.

When the hearing of the case of perjury commenced the defense raised to the court "that defendant has already been tried for these same facts." After the parties submitted extensive memorandums, the judge who presided the hearing set aside defense's contention. We agreed to review that order.

We do not have before us the usual case of former jeopardy protected by the constitutional guarantee framed in § 11 of the Bill of Rights.[3] Milton González did not plead guilty of the same offense with which he was charged before the Superior Court. He pleaded guilty of false pretenses and he is now being charged with perjury. But there is a provi-

---

[2] One of the five charges which the information contains reads as follows:

"Said defendant MILTON GONZÁLEZ ZAYAS, on or about May 13, 1969, and in Carolina, Puerto Rico, which is part of the jurisdiction of the Superior Court of Puerto Rico, San Juan Part, unlawfully, willfully, maliciously, and criminally, appeared before the District Judge Ana D. Sánchez Morales, who is an officer of the General Court of Justice authorized to administer oaths, *certified, signed, and swore as true, to be the person of Juan Reyes Torres and the owner of a real property* valued in $37,000 situated at 1121 Roosevelt Ave., Santurce, *knowing* the falsehood that he did not own said real property and that he was not *the true Juan Reyes Torres, for the purpose that said officer would authorize a bail* in favor of Pedro Pérez Pérez, accused of a violation of § 419 of the Penal Code of Puerto Rico, incurring thus the offense of Perjury such as it is defined in § 117 of the Penal Code." (Italics ours.)

[3] Section 11 provides as follows:

" .    .    .    .    .    .    .

"No person shall be twice put in jeopardy of punishment for the same offense."

sion in the Penal Code applicable to the situation of facts which this case presents. Section 44 (33 L.P.R.A. § 90) provides as follows:

"An act or omission which is made punishable in different ways by different provisions of this Code, may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

■ The provision which we have just copied came to our Code from the State of California. It corresponds to § 654 of the Penal Code of said State.[4] This provision has a greater scope than that of protecting a defendant from the double jeopardy which the Constitution of the Commonwealth bars, but it protects him from being punished more than once for one sole punishable act. It should not be confused with the constitutional guarantee. *People* v. *Tideman*, 370 P.2d 1007, 1009 (Cal. 1962). For that reason the section provides that if "an act or omission which is made punishable" has been incurred, the defendant cannot be punished for more than one offense; nor prosecuted again once he has been acquitted or convicted and sentenced under any one of the offenses. Thus it is avoided that a punishment which in effect is excessive, without it necessarily being *cruel and unusual*, be imposed on defendant for the same acts, and it is also avoided that he may be harassed and persecuted, charging him with different offenses, after having been already prosecuted for

---

[4] Section 654 of California reads as follows:

"ACTS MADE PUNISHABLE BY DIFFERENT PROVISIONS OF THE CODE. An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. In the cases specified in Sections 648, 667, and 668, the punishments therein prescribed must be substituted for those prescribed for a first offense, if the previous conviction is charged in the indictment and found by the jury."

one, under circumstances where the defense of double jeopardy does not lie because different offenses are involved. *Kellett* v. *Superior Court,* 409 P.2d 206 (1966) ; *Neal* v. *State of California,* 357 P.2d 839 (1961) ; *People* v. *Hartfield,* 90 Cal. Rptr. 274, 277 (1970) ; Annotation, 2 San Diego L. Rev. 86 (1965) ; *Applying Section 654 of the Penal Code,* 32 Cal. L. Rev. 50 (1958) ; Kahn, *Double Jeopardy, Multiple Prosecution and Multiple Punishment: A Comparative Analysis,* 50 Cal. L. Rev. 853 (1962).

■ It is necessary to point out the difference which exists between the defense of former jeopardy which the Constitution guarantees and what is provided in the second clause of § 44. The defense of former jeopardy requires the second information to be for the same offense, but does not require for its application an acquittal or a conviction. It suffices that the defendant may have been in jeopardy. Section 44 requires that the previous case should have ended, either by acquittal or conviction and sentence.

The situation which § 44 tries to protect did not present any fundamental problem when the amendment to the Constitution of the United States which prohibits double jeopardy for the same offense was drafted. Relatively few, clear, and defined offenses existed at that time. The informations were simple and exact. As the years went by and the rural society became an urban and industrialized society, the offenses multiplied and penal statutes became more encompassing and technical, one sole act being capable of violating several penal provisions. *Ashe* v. *Swenson,* 397 U.S. 436 (1970), Annotation, 39 Cincinnati L. Rev. 590 (1970). This could become unfair and oppressive for the citizen. The trial courts developed several doctrines to protect the defendant from the excessive strictness of the law. See the comprehensive study about this question in Lugar, *Criminal Law, Double Jeopardy and Res Judicata,* 39 Iowa L. Rev. 317 (1964) ; Cohen, *Deadly Weapons Act,* 31 U. Pitt. L. Rev. 476 (1970). One of

the adopted doctrines is that of collateral estoppel by judgment.

■ The Supreme Court of the United States in *Ashe* v. *Swenson*, 397 U.S. 436 (1970), refers to the practice developed by prosecuting attorneys of charging more than one offense for one sole criminal act and to the fact that the federal courts, more than fifty years ago, applied the collateral estoppel doctrine to protect the defendant. To that effect it was set forth in footnote 10 at page 445:

"It is true, as this Court said in *Hoag* v. *New Jersey, supra,* that we have never squarely held collateral estoppel to be a constitutional requirement. Until perhaps a century ago, few situations arose calling for its application. For at common law, and under early federal criminal statutes, offense categories were relatively few and distinct. A single course of criminal conduct was likely to yield but a single offense. See Comment, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L.J. 339, 342. In more recent times, with the advent of specificity in draftsmanship and the extraordinary proliferation of overlapping and related statutory offenses, it became possible for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction. See Note, Double Jeopardy and the Multiple-Count Indictment, 57 Yale L.J. 132, 133. As the number of statutory offenses multiplied, the potential for unfair and abusive reprosecutions became far more pronounced. Comment, Twice in Jeopardy, 75 Yale L.J. 262, 279–280; Note, Double Jeopardy and the Concept of Identity of Offenses, 7 Brooklyn L. Rev. 79, 82. The federal courts soon recognized the need to prevent such abuses through the doctrine of collateral estoppel, and it became a safeguard firmly embedded in federal law. See n. 7, *supra.* . . ."

■ The court considered the application of that doctrine so fundamental that in *Ashe* v. *Swenson*, it incorporated it to the guarantee set forth in Amendment V about not being twice placed in jeopardy for the same offense and applied it to the states by means of Amendment XIV. See comments

about *Ashe* v. *Swenson* in 50 B.U.L. Rev. 604 (1970); 39 Cincinnati L. Rev. 590 (1970); 71 Colum. L. Rev. 321 (1971); 84 Harv. L. Rev. 140 (1970); 69 Mich. L. Rev. 762 (1971); 49 N.C.L. Rev. 351 (1971); 49 Texas L. Rev. 148 (1970); 7 Tulsa L. Rev. 68 (1971); 39 U.M.K.C. L. Rev. 225 (1971).

It is proper to explain that this Court has not issued any ruling over § 44 that may be used as a rule for its construction. The provision which we are studying has been insignificantly mentioned in the cases of *People* v. *Rivera Ramos*, 88 P.R.R. 593 (1963); *People* v. *Fonseca*, 79 P.R.R. 34 (1956); *People* v. *Pérez*, 58 P.R.R. 542 (1941); *People* v. *Padilla*, 56 P.R.R. 138 (1940); *People* v. *Cortés*, 56 P.R.R. 157 (1940); *The People* v. *Rodríguez*, 12 P.R.R. 205 (1907); *Ex Parte Torres*, 11 P.R.R. 98 (1906); *The People* v. *Laborde et al.*, 9 P.R.R. 402 (1905); *Ex Parte Correa*, 8 P.R.R. 242 (1905). In *People* v. *Rodríguez, supra*, a contention about the application of said section was provided without an adequate study. In *People* v. *Fonseca, supra*, in deciding the contention about the application of § 44 in connection with different violations of the Weapons Law, we stated the following:

"Appellant, invoking § 44 of the Penal Code, contends that both § 8 which forbids the *carrying* of any loaded firearm, and § 32 which forbids the *discharge* of a firearm, punish the same act, that is, the *carrying* of a loaded firearm.

"Section 44 does not apply here. The illegal *carrying* of a loaded firearm is an offense which is committed independently of whether or not the firearm is discharged. The act of unlawfully discharging a firearm is an offense which is committed independently of whether or not the person discharging it, under the circumstances set forth in § 32, has a license to carry the weapon. They are, therefore, different and separate violations of law, *Cf. People* v. *Albizu*, 77 P.R.R. 843, 851."[5]

---

[5] Although the scope of § 44 was not considered in an ample manner, it is evident that the application which was made of its provisions is correct since one sole act punishable by more than one statute was not involved,

■ The principal question which the construction of § 44 raises is the scope of the concept "an act or omission."

It has been accepted by the case law of the state of origin, that the term "act or omission" to which the section refers should not be limited to the literal sense of the expression, that is, the act is not necessarily one which denotes a specific action but a single intent and objective underlying a course of criminal conduct. Neither is its applicability limited to offenses which are included or are part or ingredient of others. *Ex Parte Hayes*, 451 P.2d 430 (1969); *In Re McGreen*, 427 P.2d 161 (1967); *Neal* v. *California*, 357 P.2d 839 (1960); *People* v. *Bauer*, 461 P.2d 637 (1969); *People* v. *Jackson*, 140 N.E.2d 282 (N.Y. 1957); *People* v. *Kelly*, 270 N.Y.S.2d 127 (1966); *People* v. *Repola*, 117 N.Y.S.2d 283 (1952); *People* v. *Baker*, 278 N.Y.S.2d 309 (1967); *People* v. *Christman*, 244 N.E. 703 (N.Y. 1969); see also, *State* v. *Balley*, 427 P.2d 125 (Ariz. 1967), and *State* v. *Vallejos*, 358 P.2d 178 (Ariz. 1960).

In *People* v. *Bauer*, *supra*, the Supreme Court of California summarizes the case law of that state about what is understood by "an act or omission," for the purpose of the application of the statutory provision which we are considering. To that effect it stated:

"It is well established that the prohibition against double punishment is not limited to necessarily included or identical offenses or to cases where but one act in the ordinary sense occurs.

. . . . . . . .

"The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon

but two different punishable acts were involved: one, the carrying of a loaded firearm without obtaining a license; the other, firing a firearm.

the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one."

See *Neal* v. *State*, 357 P.2d 839 (Cal. 1960). And see specifically *In Re Hayes*, 451 P.2d 430 (Cal. 1969), where the application of these rules is considered.

█ In California it has been held that since the purpose of the provision which we are considering is to protect the citizen against the harassment and unreasonable persecution of the government, the same cannot be used to frustrate the administration of justice. *In Re Hayes, supra.* In *People v. Hartfield, supra*, defendant, while the hearing for felony was pending, appeared unexpectedly at the lower court and pleaded guilty of a misdemeanor. The court decided that under these circumstances § 654 did not protect him. And in *In Re Ford*, 424 P.2d 681 (Cal. 1967), it was decided that the statutory provision was not applicable when the conduct prohibited by law affects more than one person. See also, *People* v. *Taylor*, 93 Cal. Rptr. 257 (Cal. 1971).

The tendency of the state courts in extending the protection which § 44 establishes, although no statutory provision as ours exists, is evident. The Supreme Court of Alaska, in a very well reasoned and convincing opinion, in *Whitton* v. *State*, 479 P.2d 302 (1970), concludes that the provision of the state Constitution which protects against double jeopardy for the same offense, protects the citizen also from multiple sentences for one act or omission. A likewise conclusion is reached by the courts of Hawaii and Oklahoma in *State* v. *Ahuna*, 474 P.2d 704 (Hawaii 1970) and *Hilderbrand* v. *Mills*, 476 P.2d 375 (Okla. 1970). See also: *Statutory Implementation of Double Jeopardy Clause: New Life for a Moribund Constitutional Guarantee*, 65 Yale L.J. 339 (1956); Annotation: *Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties*, 67 Yale L.J. 916 (1958); Grant, *The Lanza Rule of Successive Prose-*

*cutions,* 32 Colum. L. Rev. 1309, 1323 (1932) ; Kirchheimer, *The Act, the Offense and Double Jeopardy,* 58 Yale L.J. 513 (1949) ; Comment: *Twice in Jeopardy,* 75 Yale L.J. 262 (1965) ; Lugar, *Criminal Law, Double Jeopardy and Res Judicata,* 39 Iowa L. Rev. 317 (1954) ; *The Protection from Multiple Trials,* 11 Stan. L. Rev. 735 (1959).

Before considering the facts in this case we must set forth what is stated in *People* v. *Branch,* 260 P.2d 27 (1957), to the effect that: ". . . it is indispensable in order to impose separate punishments, that there be evidence of separate and divisible acts that are not incidental to each other. In determining this question the courts have refused to dissect the evidence minutely in an attempt to find separate offenses, but on the contrary, have held that a broad transactional approach should be made." This rule was adopted by the Supreme Court of Arizona where a similar provision exists.[6] *State* v. *Vallejos,* 358 P.2d 178 (1960). And see also, *State* v. *Sulen,* 485 P.2d 826 (Ariz. 1971), and *State* v. *Mendoza,* 481 P.2d 844 (Ariz. 1971).

The applicable law having been set forth, it is proper to consider the specific facts of the instant case. A person appears at the Carolina Part of the District Court to serve as surety for two persons. He states that he is Juan Reyes Torres and proceeds to sign and swear to the bail. As it is stated in the complaint for false pretenses: "simulating to be and passing as Juan Reyes Torres and under such usurped character, requested, obtained, and posted the indicated bail" and in the one for perjury: "appeared before . . . Judge . . . certified, signed, and swore as true, to be the person of Juan Reyes Torres and the owner of a real property . . . knowing the falsehood that he did not own said real property and that he was not the true Juan Reyes Torres for the purpose that said officer would authorize a bail . . . ."

---

[6] Arizona Penal Code 13-1641.

■■ As can be observed from the reading of the essential facts alleged in the complaint for false pretenses and in the information for perjury, he is only charged with a sole and indivisible essential fact: simulating to be Juan Reyes Torres "requested," "signed," "swore," "obtained," and "posted" a bail. All these terms which appear in the preferment of charges describe one sole course of conduct for the only purpose of unlawfully obtaining the freedom of two persons. It is one sole transaction. And remember, as it was stated in *Branch, supra,* that in applying § 44 the facts should not be dissected minutely to try to establish separate offenses. If it were thus done, the purpose which originated § 44 would be frustrated: to avoid the unreasonable persecution of the citizen filing informations for different offenses which are originated in a sole act or omission is the purpose of such valuable section; to avoid his being convicted of violating several provisions of the Code with a series of punishments which might be excessive. The State could charge petitioner of perjury (felony) or false pretenses. But it preferred that a C.I.C. agent would first file the complaint for false pretenses. It waited for the prosecution for the misdemeanor to end in order to file the information for felony. This is not permitted by § 44.

For the foregoing reasons the order appealed from will be set aside and another rendered ordering the dismissal of the information for perjury.

Mr. Chief Justice Negrón Fernández did not participate in the decision of this case.