[Crim. No. 409.   Third Appellate District.—January 22, 1918.]

THE PEOPLE, Respondent, v. CHARLES D. BARKDOLL, Appellant.

CRIMINAL LAW—UNLAWFUL SALE OF ALCOHOLIC LIQUORS—PURCHASE BY DETECTIVE — INSUFFICIENT DEFENSE. — In a prosecution for unlawfully selling alcoholic liquor in no-license territory, it is no defense that the purchase was made by and at the instance of a person employed by the sheriff to ferret out illicit sellers of intoxicating liquors.

ID.—EVIDENCE—REPUTATION OF DEFENDANT.—In a criminal prosecution, it is not error to refuse defendant's offer to prove that his reputation for truth and veracity was good, where there was no evidence introduced tending to show that it was bad.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Weldon & Mockler, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was indicted for and convicted of having unlawfully sold, furnished, and distributed alcoholic liquor to one William Frey within the boundaries of the third supervisor district of Mendocino County, the same being no-license territory. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

Counsel for appellant present three questions for review: 1. That the court erred in not granting defendant's motion, made at the close of the people's evidence, to instruct the jury to acquit; 2. That the court erred in not permitting defendant to introduce evidence of his good character; 3. That the court erred in not pronouncing judgment on the verdict of the jury.

The first and third of these points rest upon the same proposition as stated in defendant's brief: "That all the evi-

dence in this case shows that instead of a sale it was an 'entrapment'; that it was made by an officer who was under the pay of officers of this county; that if any crime was had, it was instigated by a representative of the officers of the county and at their instance and with money furnished by them."

Defendant was conducting a barber-shop in the town of Covelo, Round Valley. The shop consisted of a front or operating room and a room back of the working-room. One Swaney was in the service of the county, employed by Sheriff Byrnes, and was receiving fifty dollars per month and no other compensation for his services, which were to ferret out "blind piggers," or illicit sellers of intoxicating liquors, in Round Valley. Among his acquaintances in the valley was one Frei, or Frey, the prosecuting witness. Frei was well known to defendant and was in the habit of visiting defendant in his shop "to chat with him—pretty chummy." Swaney and Frei met at Covelo in front of defendant's barber-shop on the day charged in the indictment, and Swaney asked Frei to go into defendant's shop and buy a small bottle of whisky, giving Frei a dollar of his own money with which to pay for it. Frei did not know at the time that Swaney was a detective. Frei was somewhat given to drinking, and admitted that he had been drinking that day and might have been in some degree intoxicated. His testimony was that he went into the shop and purchased "one of the small soda bottles or pint bottles" and afterward delivered it to Swaney and drank some of the contents with Swaney and another man in a near-by alley; that it was delivered to him personally in the back room of his shop by defendant, to whom he paid the dollar given him by Swaney. The bottle, with what remained of the contents, was afterward delivered to the sheriff, who marked it for identification and placed it in his safe, where it remained and was produced at the trial and its contents shown to contain forty-five per cent "of absolute alcohol by volume." Detective Swaney was asked to state what was done at the time and testified as follows: "Why I met Frei on the street in front of Barkdoll's barber-shop and I asked him if he could get me a bottle of whisky and he said yes he would, so I gave him a dollar and we went over on the sidewalk in front of the barber-shop and he told me to wait outside and he went in and about ten minutes he came out and said he didn't have

any; he would have to wait a little while; so I waited about twenty minutes and then I went in to see about it and Frei wasn't in there at the time, so I went into the back room and there was a couple of Indians in there, and opened the back door and I seen Mr. Barkdoll coming with a sack. Q. Where was he? A. Why, he was coming in from the back yard. Q. He was out in the back yard when you saw him? A. Yes, sir. Q. Well, go ahead and tell us. A. And I asked him if Frei hadn't given him a dollar for a bottle and he told me yes; I told him I would like to get the bottle and he told me that he wouldn't give me the bottle, he would give it to Frei; he was the one that gave him the dollar. So I went out then and I see Frei on the sidewalk, and I reminded him of it again and about ten minutes he came out with a bottle and told me to come over into the poolroom next door there. About ten minutes after I came out I met Mr. Frei; I reminded him of the bottle again and he went back into the barber-shop; when he came out with the bottle, why he told me to come into the poolroom; I went into the poolroom, opened the bottle then and had a couple of drinks out of it, him and another fellow by the name of George Fitch. Then he gave me the remainder of the bottle. Q. And what kind of a bottle was it in? A. That's the bottle there.'' He testified that he kept the bottle with its remaining contents and delivered it to Sheriff Byrnes without in any way changing the contents of the bottle. He testified further: ''Q. Where were you when Frei went in the last time? A. I was on the sidewalk in front of Barkdoll's barber-shop. Q. And are there windows in the front of the barber-shop? A. Yes. Q. Could you see into the shop? A. Well, there was two rooms in the shop, front room and barber room and back room in there. Q. Well, could you see into either one of the rooms? A. Yes, I could see into the front room. Q. And could you see into the back room? A. No, sir. Q. Did you see where Mr. Frei went when he went into the barber-shop? A. Yes. Q. And where did he go? A. Into the back room. Q. And was Barkdoll in the shop, that is, in the front part of the shop when Frei went in? A. Yes. Q. And did he remain there all of the time that Frei was inside? A. No, sir; he went into a back room when Frei went in. Q. Did you see Frei when he came from the back room? A. Yes; I seen him when he came out. Q. And did you see Barkdoll? A.

No, sir; I didn't see Barkdoll.   Q. He didn't come out with Frei?   A. No, sir.''

Counsel for defendant cite certain Colorado cases which announce the rule that ''the sale of liquors in violation of a town ordinance to one who purchases the liquor at the instigation of the town for the purpose of laying a foundation to prosecute the seller does not authorize a conviction under the ordinance.'' (*Wilcox* v. *People,* 17 Colo. App. 109, [67 Pac. 343]; *Ford* v. *City of Denver,* 10 Colo. App. 500, [51 Pac. 1015]; *People* v. *Braisted,* 13 Colo. App. 532, [58 Pac. 796].) In *People* v. *Chipman,* a later Colorado case, 31 Colo. 90, [71 Pac. 1108], the detective was in the pay of the municipality, but purchased the liquor with his own money. It was held no defense that he was an officer. In *People* v. *O'Brien,* 35 Mont. 482, [10 Ann. Cas. 1006, 90 Pac. 520], a Montana case, the money with which the liquor was purchased was furnished the witness by the county attorney. It was held no defense. Citing the rule as stated in 23 Cyc., at page 184: ''It is no defense to a prosecution for an illegal sale of liquor that the purchase was made by a 'spotter' detective, or hired informer.'' Numerous cases are cited in support of the text.

Where a person is innocent of any intention to commit a crime and is inveigled into its commission by an officer of the law for the purpose of advancing his standing for efficiency or to obtain revenue by fine for the municipality, it might be said to uphold such practices would be repugnant to any just conception of good morals and violative of sound public policy. But we have no such case here. The facts and circumstances surrounding the transaction in the present instance were quite sufficient to justify the jury in believing that the defendant was ready, able, and willing to comply with the request made of him. He testified in his own defense and his testimony went no further than to deny that he sold or gave a bottle of liquor to Frei, as testified to by him. The evidence in the case has no tendency to place defendant in the category of those persons in whose behalf some courts have enforced the rule invoked by him. Defendant's reputation for truth and veracity was in no wise questioned by any evidence introduced by the people. It was not error to refuse defendant's offer to prove that his character in that respect was good where there was no evidence introduced tending to show that his general reputation for truth and veracity

was bad.   (*People* v. *Cowgill,* 93 Cal. 596, [29 Pac. 228];
*Title Ins. Co.* v. *Ingersoll,* 153 Cal. 1, 7, [94 Pac. 94].)

The judgment and the order are affirmed.

Burnett, J., and Hart, J., concurred.