[Crim. No. 1578. First Appellate District, Division One.—July 28, 1930.]

THE PEOPLE, Respondent, v. MATTHEW GALLAGHER, Appellant.

Soren X. Christensen and Charles Taylor for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

THE COURT.—The appellant, Matthew Gallagher, was charged with having had morphine in his possession in violation of the state law regulating the sale and use of poisons, and upon trial before a jury was convicted. The accusation also charged and appellant admitted two prior convictions of felony, for having in a similar manner violated the same state law. Therefore, the maximum penalty under the present conviction was ten years' imprisonment in the state penitentiary.

At the trial appellant did not deny having had possession of said narcotic, but asserted that such possession was brought about solely through the direct activities and at the instigation of state narcotic agents, for the very purpose of entrapping him, and that immediately thereupon they arrested him for the offense. In his defense, therefore, he claimed the benefits of the doctrine of entrapment and offered an instruction upon that subject, which the court refused to give, and he now contends that such refusal constitutes reversible error. Respondent does not challenge the soundness of the legal principles set forth in said instruction, but contends that the evidence was insufficient as a matter of law to warrant the court in giving such instruction, and that therefore such refusal did not amount to error.

We are of the opinion that the contention made by respondent is not supported by the record. From it the fol-

lowing facts appear: Appellant had been a narcotic addict for about twenty-five years, and at the time this transaction took place was daily consuming about $3 worth of drug. About 7:25 o'clock on the evening of October 22, 1929, accompanied by his wife, who is also an addict, appellant drove in his automobile to a point on Natoma Street on the west side of 15th Street, between Howard and Mission Streets, in San Francisco, and stopped along the curb a short distance behind another automobile which was standing there. Appellant alighted, walked around the rear end of his machine and proceeded up the sidewalk. Upon reaching a point immediately opposite the parked automobile, a state narcotic agent named Whipple jumped out of the parked automobile and, with pistol in hand, which he pointed at appellant, told appellant he was under arrest. Sitting in the automobile with Whipple was another state narcotic agent named Dundas, and a man referred to in the record as "Blackie" Dall, who was not only a drug addict but a well-known peddler of drugs, and who had just been released on parole from the federal penitentiary at Leavenworth, Kansas. Appellant was searched and a tobacco can was found in his possession containing eight cubes of morphine wrapped in paper. Whipple then proceeded to search appellant's wife and appellant's automobile, but found nothing further incriminating. Afterwards the agents proceeded to appellant's apartment, which was also searched, but nothing incriminating was found therein.

Appellant was a witness in his own behalf, and the substance of his testimony was as follows: He said that on the afternoon of the day of his arrest, Dall approached him at 16th and Mission Streets and asked him if he wanted to buy any drug; that he replied that he did not; and that Dall then said that he would give appellant a "good buy"— that he would deliver "two quarters" for $5; and that thereupon appellant accepted the proposition. Dall then told appellant, according to the latter's testimony, that he did not have the drug with him but requested appellant "to play around for about a half hour," and then come back and that in front of an apartment house which Dall pointed out appellant would find the drug in a can lying alongside of the curb. Appellant testified that he followed these directions and that when he drove up in front of the

apartment house he saw the can, got out and picked it up, and that his wife then requested him to go to a grocery store near by and buy some cigarettes, and that just as he was proceeding up the sidewalk for that purpose he was arrested as above described.

Dall did not testify at the trial, but on cross-examination of Whipple the latter admitted having been in communication with Dall two days before appellant was arrested and that, acting under instructions from Whipple, Dall met Whipple and the other state agent a short distance from the place of the arrest just before the arrest was made, and that all three drove in Whipple's automobile to the appointed place in front of the apartment house; that they had been there only a short time before appellant drove up and was placed under arrest. Whipple further testified that he had searched Dall's room the day before appellant was. arrested and also when Dall entered Whipple's machine to accompany the latter to the place where appellant was arrested; but no explanation was made by the prosecution in presenting its evidence for the apparent co-operation between Whipple and Dall. The foregoing is substantially all of the evidence relating to the point now under consideration.

It is doubtless the law, as respondent contends, that the trial court should refuse to give an instruction as to any theory which is not supported by substantial evidence; but it is also well settled that a defendant is entitled to an instruction based upon the theory of his defense, provided such instruction correctly states the law and the defense is supported by substantial evidence. (8 Cal. Jur., p. 335; *People* v. *Hemple,* 4 Cal. App. 120 [87 Pac. 227]; *People* v. *Ashland,* 20 Cal. App. 168 [128 Pac. 798]; *People* v. *Newcomer,* 118 Cal. 263 [50 Pac. 405].)

In the present case the defendant's testimony, if true, when considered along with the circumstances revealed on cross-examination of the witnesses for the prosecution, was legally sufficient to justify a reasonable inference that he was the victim of- an entrapment, and that being so, he was clearly entitled to the benefit of an instruction upon that doctrine. No other instruction was given upon that subject, and it follows, therefore, that the refusal to give the one offered by appellant amounted to prejudicial error.

As said in *People* v. *Lawlor*, 21 Cal. App. 63 [131 Pac. 63, 66], "the failure of the court to charge, at the request of the defendant, upon any matter of law applicable to the facts of the case is tantamount to a misdirection of the jury."

It must be borne in mind that appellant was not charged with having sold or bargained to sell any drugs; nor was any evidence whatever introduced to show that such was his intention. The present case, therefore, is quite different from those upon which respondent seems to rely, showing that a defendant was already in the illegal possession of an article, but was entrapped into selling it. In the case at bar the theory of appellant's defense was that the possession by him of said drug was brought about solely through the instrumentalities of the state's agent and those working under him, for the very purpose of causing his arrest. As said in the case of *In re Moore*, 70 Cal. App. 483 [233 Pac. 805, 806], "It may be conceded that it would be violative of sound public policy and repugnant to good morals to uphold the conviction of a person who, being entirely innocent of any intention to commit a crime, was inveigled into its commission by an officer of the law or by a private detective hired for that purpose by some self-constituted guardian of the public morals. (*People* v. *Barkdoll*, 36 Cal. App. 25 [171 Pac. 440].)"

We are not to be understood as holding that appellant's version of the transaction was true; that was a question to be determined in the trial court. But as stated, if believed by the jury, it was legally sufficient to entitle him to the benefits of the doctrine of entrapment, and consequently the jury should have been instructed accordingly.

The judgment is reversed.