[Crim. No. 4776. Second Dist., Div. One. Oct. 9, 1952.]

THE PEOPLE, Respondent, v. LORENZO GONZALES ALAMILLO, Appellant.

618

William W. Larsen for Appellant.

Edmund G. Brown, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was accused of the crime of violating section 11500 of the Health and Safety Code of the State of California, a felony, in that he did on or about the 6th day of July, 1951, willfully, unlawfully, and feloniously sell, furnish, and give away a preparation of heroin.

Following the entry of a plea of not guilty, trial was had before a jury which returned a verdict finding defendant guilty of the offense charged against him. Motion for a new trial was denied and judgment pronounced.

From the judgment and order denying his motion for a new trial defendant prosecutes this appeal.

The factual background surrounding this prosecution may be summarized as follows: There was testimony on behalf of the prosecution that defendant operated a barbershop at 1816 East First Street in the city of Los Angeles. On July 6, 1951, at approximately 5:30 p. m. Deputy Sheriff Robert Ruskin accompanied by a confidential operator entered defendant's shop. Defendant testified that the name of the operator was Jack Rutherford; that he had known him for about three months, and had cut his hair a few times. Two other officers,

Jack A. Jones and Thomas E. Farrell, remained in an automobile in a parking lot adjoining the barbershop.

When Officer Ruskin and Jack Rutherford entered the barbershop they sat down and waited approximately half an hour. After defendant had finished working on a customer, he walked by and asked Ruskin and Rutherford what they wanted. Officer Ruskin said he wanted to buy a cap of heroin. Defendant said, "Wait a minute," and went back to his chair and started to work on another customer. About 20 minutes later, after this customer had left, Officer Ruskin and Rutherford walked to the front of the barbershop, at which time the defendant again asked Ruskin what he wanted, and Ruskin said, "I would like one cap of heroin." Defendant told Ruskin to go back and sit down, which Ruskin and Rutherford did. Again defendant proceeded to work on a customer. After this customer had left, the defendant got a broom and started sweeping the shop. Ruskin and Rutherford walked up to defendant, and the latter said to Ruskin, "Put your $5.00 on the counter," which Ruskin did, whereupon defendant placed in Ruskin's hand one capsule containing white powder. Ruskin and Rutherford then walked away and were joined by Sergeant Jones and Detective Farrell. Ruskin, Jones and Farrell returned to the barbershop and placed the defendant in custody and proceeded to search him. Out of his right-hand pants pocket the officers recovered the marked $5.00 bill. In a room at the rear of the shop Ruskin found an empty capsule on top of a box of pills and debris on a studio couch. Officer Farrell found a capsule containing residue under the couch. Defendant when questioned in this room said, "All right, you boys got me, I guess. I sold you the cap. I thought I was doing you a favor."

The capsule purchased by Ruskin admittedly contained a mixture of morphine and heroin and the other capsules contained traces of heroin and morphine.

Sworn as a witness in his own behalf defendant testified that Officer Ruskin came into his shop about 5 o'clock with a man by the name of Jack Rutherford; that at the time he was cutting hair and there were seven or eight other people in the shop; that after about forty minutes or an hour, Rutherford approached him and said, "I am very sick. I have been very sick and I haven't been able to get anything." The defendant said, "What do you mean get anything?" Rutherford said, "You know I am a hype." Defendant testified he told him, "I think you are in the wrong place—there are a lot

of guys peddling. Why don't you go over there and see them?''; that Rutherford said, ''Yes, but they don't want to sell me''; that after a while Rutherford again asked, ''Why don't you try to help us? I am very sick''; that defendant then said, ''I can't do anything for you.'' At that time, according to defendant's testimony, ''a fellow passed and hollered at him (apparently meaning that defendant hollered), 'Here, come here, I want to talk to you.' I talked to him in Spanish and I told him that there was a fellow that was sick, that if he wanted to—you know, I know he was making money like that, and I told him and he said, 'Well, I will give it to you.' ''

Defendant further testified that he later gave the capsule to the operator Jack Rutherford and that ''He gave me $5.00 and I put it in my pocket. I got it from him. They gave me the $5.00 and then I gave him the cap. I put the $5.00 in my pocket.''

Appellant first contends that the court erred in refusing to give a proffered instruction embodying the law of entrapment and in failing to give any instruction thereon.

It is a settled rule, as urged by appellant, that jury instructions must be responsive to the issues, and that in criminal cases the issues are determined by the evidence (*People* v. *Carmen*, 36 Cal.2d 768, 772 [228 P.2d 281]). In the instant case, if there was any evidence deserving of any consideration whatever, upon the issue of entrapment, the court should have instructed the jury upon the doctrine applicable to that issue.

Taking the testimony of appellant at its face value, we are persuaded that it does not present a situation deserving of any consideration whatever that he was lured or led into trouble without any intent on his part to commit the offense charged against him. Appellant's own testimony establishes nothing more than a willing seller and a willing buyer of a narcotic. His admissions to the officers, the negotiations conducted between himself and the officers, the presence of the empty capsules in the rear of his barbershop, coupled with the admitted sale of the narcotic and his retention of the $5.00 paid therefor all belie the claim that the offense was conceived and planned by the officers and that they procured its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud on the part of officers of the law. Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment. The law does not frown upon the entrapment of a criminal, but

condemns and will not tolerate the seduction of innocent people into a criminal career by its officers. There is an utter lack of evidence in the case at bar that appellant was inveigled into the commission of the crime, or that the officers had been the procuring cause or instigators of the criminal intent. Nor is there any evidence that any persuasion or inducement was offered to appellant to make the sale in question outside of the ordinary conversation that would take place between a willing seller of narcotics and a willing buyer. It is true that according to appellant's testimony the operator appeared to be ill and in distress, but under the circumstances here present, that does not justify an inference of entrapment where the evidence of appellant's willingness to commit the offense and assume the chance of apprehension is abundantly established, not alone by surrounding facts and circumstances, admissions of appellant, but by his own testimony given at the trial. Therefore, no prejudicial error was committed by the court in refusing to instruct the jury on the law of entrapment. That issue was not sufficiently raised by the evidence. (*People* v. *Lindsey,* 91 Cal.App.2d 914, 917 [205 P.2d 1114]; *People* v. *Rucker,* 121 Cal.App. 361, 364 [8 P.2d 938]; *People* v. *Cherry,* 39 Cal.App.2d 149, 151, 152 [102 P.2d 546]; *People* v. *Schwartz,* 109 Cal.App.2d 450, 454, 455 [240 P.2d 1024].)

In urging that the verdict is contrary to the law and the evidence, appellant relies upon the same reasoning advanced in support of his first contention. From what we have herein stated it is manifest that the claim as to the verdict being against the evidence and contrary to law cannot be sustained.

For the foregoing reasons the judgment and the order denying defendant's motion for a new trial are and each is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied October 23, 1952, and appellant's petition for a hearing by the Supreme Court was denied November 6, 1952.