[Crim. No. 1032. Fourth Dist. Aug. 1, 1955.]

THE PEOPLE, Respondent, v. VAN PHILPOT EVANS, Appellant.

734

Edgar G. Langford and J. Perry Langford for Appellant.

Edmund G. Brown, Attorney General, and Marvin Gross, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant and one Stanton were charged with the sale of narcotics on October 27, 1954, in violation of section 11500 of the Health and Safety Code. The defendant was also charged with two prior convictions of felony. He pleaded not guilty, but admitted the prior convictions. A jury found him guilty and he was sentenced to prison. He has appealed from the judgment on the sole ground that the court refused to give instructions on the doctrine of entrapment, which were requested by him.

As stated by the appellant, the evidence was without conflict except as to minor details. On October 16, 1954, one McBee, a state narcotic officer who was accompanied by· one Covington, saw the appellant in a small café in San Diego. McBee inquired of Evans as to where he could obtain some marijuana, and Evans referred him to a man called "Junior." Later that night McBee saw Evans on the street and complained that the "stuff" he. had gotten from "Junior" was bad. On several occasions over the next few days, McBee saw Evans and asked his help in locating the person from whom McBee had purchased the bad narcotics on the 16th. Evans told him that he did not know the person's real name but would try to find out. On October 27, at about 8 p. m., Evans and Stanton were walking on Market Street when they met Covington. Covington inquired of Evans about purchasing some marijuana. Evans testified that he told him to see

Stanton; that Covington and Stanton started to walk off; that "then Stanton called me, and said 'Come on' "; that they walked to the corner and he, Evans, said he was going to the barber shop; that Covington said "We will drop you off there. Come on"; that he went on with them and in about a block they saw McBee parked in a car; that Covington got in first and then he and Stanton got in; that McBee asked "Where to?"; that Stanton gave McBee directions, and after they had gone a few blocks Stanton told McBee to stop; that Stanton got out, walked off a little ways, and "went down in front of his pants"; that Stanton then came back, got in the car and "leaned over to McBee . . . in other words, they did some transacting"; that McBee asked "Is this good?" saying he had been "palmed" once and wouldn't like it to happen again; that "I spoke up and told him yes, it was good"; that when he got out of the car McBee handed him two one dollar bills; that he asked "What is this for?" and Covington said it belonged to Stanton; and that he then said, "Come on Stanton, I got two bills." Appellant further testified that McBee did not say anything to him about the price; that he had never sold any marijuana; that he did not intend to sell marijuana to McBee on this occasion; and that he told the officers that "everybody I ever knowed sold them three for two." Evidence was received that he had told the officers, in an interview, that on the 27th he had told McBee that these cigarettes were good; that he always tells inquirers where to get "hot stuff"; that "If a guy says it is all right . . . why I tell a guy I stand behind it"; that he told McBee on the 27th "I stand behind it"; and that the regular price of marijuana cigarettes was three for $2.00.

McBee testified that after he stopped the car he told Evans that he wanted three marijuana cigarettes; that Stanton got out and walked to a point opposite the rear of the automobile; that he was in sight all the time and there was no one anywhere near him; that Stanton returned in less than a minute and got in the car; that while Stanton was out of the car he, McBee, asked Evans what the three cigarettes would be; that Evans said $2.00, and he gave Evans the $2.00; that when Stanton returned he handed McBee three marijuana cigarettes; that he told Evans that he wanted the "stuff" to be good; that Evans replied that he would stand behind it; that Evans then told Stanton "I have got the bread"; that this means "I have the money"; and that Stanton and Evans then got out of the car and he drove off.

Another officer testified as to what the appellant told him on October 29, at the police station, and a tape recording of appellant's interview with several officers at about that time was introduced in evidence, in both of which the appellant admitted the general facts as above stated.

■ It is well settled that entrapment is a good defense when the criminal design originates with an officer who induces a law-abiding citizen, by persuasion or deceit, to commit a crime which he would not have committed in the absence of such inducement. (*People* v. *Raffington,* 98 Cal.App.2d 455 [220 P.2d 967].) ■ However, it is only when the criminal design does not originate with the accused, and a decoy is used to ensnare an innocent man by deceitful representations, inducement or allurement into the commission of the crime, that there is entrapment. (*People* v. *Lagomarsino,* 97 Cal. App.2d 92 [217 P.2d 124] ; *People* v. *Lindsey,* 91 Cal.App.2d 914 [205 P.2d 1114].) ■ ''It is not the entrapping of a criminal that the law frowns upon but the seduction of innocent persons into a criminal career by its officers.'' (*People* v. *Lindsey,* 91 Cal.App.2d 914 [205 P.2d 1114].) ■ Persuasion and allurement are necessary elements of such a defense, and the evidence must disclose that the defendant had been induced to commit an act which he would otherwise not have done. (*People* v. *Carlton,* 83 Cal.App.2d 475 [189 P.2d 299].) ■ It is equally well settled that the question of entrapment is one of fact for the jury, if there is substantial evidence in the record which would support that theory. (*People* v. *Terry,* 44 Cal.2d 371 [282 P.2d 19].) ■ It has frequently been held that where there is no substantial evidence in support of that theory instructions on entrapment need not be given. Webster defines ''substantial'' as: having good substance; strong; considerable in amount or value.

The appellant specifically relies on the recent case of *People* v. *Valdez,* 132 Cal.App.2d 783 [283 P.2d 36], where it was held that such an instruction should have been given. In that case the defendant admitted possession of the narcotic, and his sole defense, in the trial and in the argument to the jury, was that he was entrapped into taking such possession after he had abandoned a prior possession. The defendant's testimony, if believed, was sufficient to show that there would have been no possession except for the pathetic appeal and persuasion of an agent for the officers.

■ While it is well settled that a defendant is entitled to instructions based upon the theory of his defense, the court

may refuse instructions on any theory which is not supported by substantial evidence. (*People* v. *Gallagher*, 107 Cal.App. 425 [290 P. 504].) In the instant case the entire defense, as disclosed by the evidence, was that the appellant had nothing to do with the actual sale of the narcotic and took no part in such a sale, rather than that he was induced or persuaded to commit a criminal act which he would otherwise not have intended to do. There was an utter lack of evidence of any persuasion or inducement being used to induce him to commit the crime, other than the ordinary conversation that would take place between a willing seller and buyer. (*People* v. *Cherry*, 39 Cal.App.2d 149 [102 P.2d 546].) The appellant's own testimony discloses nothing more than that, insofar as any element of any inducement or allurement is concerned. By his own admission he was well acquainted with such traffic, and had been in the habit of telling inquirers where they could get such "hot stuff." The only reasonable inference from the evidence is that he was ready in his own mind to participate in this crime and that the officers merely furnished the opportunity. By his own admission he had a close association with the sellers of narcotics, and took a willing part in this transaction. His excuse, which he did not attempt to base upon entrapment, was that he did these various things just to get rid of people who asked him for information concerning "hot stuff." This was so unbelievable, in view of his own admissions and acts, that it is unreasonable to believe that an instruction on entrapment would have affected the result. Viewing the question as one of fact, there was no substantial evidence which would have supported a finding of entrapment. (*People* v. *Alamillo*, 113 Cal.App.2d 617 [248 P.2d 421].)

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.