[Crim. No. 5477.   Second Dist., Div. One.   Dec. 23, 1955.]

THE PEOPLE, Respondent, v. MANUEL TONY CAUDILLO, Appellant.

Gladys Towles Root for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was accused in two counts of violation of section 11500 of the Health and Safety Code (sale of heroin), the first alleged offense having taken place on or about February 14, 1955, and the second on or about February 17th of the same year. The information also charged that defendant had suffered a prior conviction for a violation of section 11500 of the Health and Safety Code, a misdemeanor. To each count of the information defendant pleaded not guilty and denied the alleged prior conviction. When the cause was called for trial, by stipulation it was submitted to the court on the testimony adduced at the preliminary examination with each party reserving the right to introduce additional evidence. Following a reading of the transcript of the preliminary examination, the People rested. Defendant testified as a witness in his own behalf. He was adjudged guilty on each of the two counts. Motion for a new trial was denied and the allegation of a prior conviction was found to be untrue. Defendant was sentenced to state prison. From the judgment of conviction and from the order denying his motion for a new trial defendant prosecutes this appeal.

Concerning the factual background surrounding this prosecution, the record reflects that Frank Vacio, a Los Angeles County deputy sheriff assigned to the narcotics detail, saw defendant on February 14, 1955, at approximately 1:45 p. m. at 725 South Bernal. At that time Mr. Vacio asked defendant if the latter had any narcotics. He stated that he did not, but he knew where he might get some and asked if Vacio would drive him there. Mr. Vacio said he would and defendant took him to several locations in East Los Angeles.

After several phone calls, defendant instructed the deputy sheriff to drive to the corner of Wabash and Evergreen Avenues. Defendant then asked Mr. Vacio for $15 for half a gram, which he received. Caudillo then left the vehicle and returned approximately three or four minutes later. Then Mr. Vacio drove the defendant back to the latter's home. He asked Mr. Vacio if he wanted to "fix" there. The officer refused and defendant gave him four gelatin capsules containing a whitish powder and said, "Well, I'm going to keep one of the caps for myself." Mr. Vacio then left. The latter also saw defendant on February 17, 1955, at 725 South Bernal Street. Defendant asked him if he wanted to "connect" again and Mr. Vacio replied, "Yes." Again they went to several locations and made a phone call before

they drove to the 1900 block on Bailey Street in East Los Angeles. Mr. Vacio then was asked by defendant for $10 for the narcotics. Vacio gave the money to him. Defendant left the car, returned approximately three minutes later and asked Mr. Vacio to drive him to 725 South Bernal Street. At that address, as he was departing, Caudillo handed Mr. Vacio three gelatin capsules containing a whitish powder and Mr. Vacio drove away.

Deputy Sheriff Vacio again saw defendant on March 1, 1955, at the above address. Deputy Fletcher and Sergeant Cook were also with him at that time. They had a conversation with Caudillo and the statements were freely and voluntarily given. At that time Mr. Vacio asked Caudillo if it were not true he had given the latter money for narcotic purchases and that Caudillo had given him in turn the narcotics and Caudillo replied, ''Yes.''

Testifying as a witness in his own behalf, defendant stated that he knew Officer Vacio. He also testified that he had previous to that time been in Lincoln Heights jail, having been arrested on suspicion of narcotics and burglary. He stated he was released from Lincoln Heights and talked with the officers about helping them. He admitted that he saw Mr. Vacio when the latter came to his house and hollered his nickname ''Pinker.'' Vacio and Caudillo then had a conversation in which Caudillo stated that Vacio asked him if he could ''pickup'' for Mr. Vacio. Caudillo admitted that he got five caps of narcotics on that day for Mr. Vacio. He claimed, however, that at that time he was working under an agreement with the Los Angeles Police Department. He claimed that the agreement was to help them in turning up narcotic users because they had turned him loose on an arrest involving narcotics marks. Several days later Caudillo claimed that Vacio also came over to his house and knocked on the door, and on that day they also went for a drive at which time Caudillo admitted picking up three capsules for $10 and giving them to Mr. Vacio. Defendant also admitted that on the first occasion Mr. Vacio gave him a capsule as his reward.

The purchases made by Officer Vacio were introduced into evidence after an expert chemist had testified that they contained a narcotic known as heroin.

The sole ground urged for a reversal is that the evidence is insufficient to support the judgment of conviction in that appellant was entrapped into the commission of the crime

charged against him. This contention is without merit. ██ As was said by this court in *People* v. *Schwartz,* 109 Cal.App.2d 450, 455 [240 P.2d 1024] : ''There is ample testimony in the evidentiary narrative hereinbefore set forth to justify the jury in concluding that appellant was a willing seller of narcotics, and his conviction is not vitiated merely because enforcement officers or their agent became the willing buyer and merely created the opportunity for appellant to ply his trade (*People* v. *Cherry,* 39 Cal.App.2d 149, 152, 154 [102 P.2d 546] ). It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment. (*People* v. *Lindsey,* 91 Cal.App.2d 914, 916, 918 [205 P.2d 1114] ; *People* v. *Cherry, supra,* pp. 152, 154; *People* v. *Rucker,* 121 Cal.App. 361, 364 [8 P.2d 938] ; *People* v. *Grijalva,* 48 Cal.App.2d 690 [121 P.2d 32] ; *People* v. *Crawford,* 105 Cal.App.2d 530, 536, 537 [234 P.2d 181].)

''Especially is this true in that class of cases where the offense is one of a kind habitually committed, and the solicitation merely furnishes the evidence of a course of conduct'' (16 C.J. 88, 89.) The case at bar is barren of evidence of any element of unlawful entrapment. The jury was warranted in inferring that appellant was not persuaded or lured, but that he willingly committed the offense charged against him and assumed the chance of apprehension.'' (See also *People* v. *Alamillo,* 113 Cal.App.2d 617, 620, 621 [248 P.2d 421] ; *People* v. *Branch,* 119 Cal.App.2d 490, 494, 495 [260 P.2d 27] ; *People* v. *Finkelstin,* 98 Cal.App.2d 545, 553 [220 P.2d 934].)

Other than his own testimony, appellant offered no evidence in the trial court that he was working under an agreement with the Los Angeles Police Department to help them ''in turning up narcotic users.'' Throughout all the negotiations involved in the instant case appellant made no offer or effort to ''turn up'' any narcotic peddlers. His claim in that regard lacks substance here.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is, affirmed.

Doran, J., and Ashburn, J. pro tem.,* concurred.

_____
*Assigned by Chairman of Judicial Council.