[Crim. No. 10903.   Second Dist., Div. Three.   Feb. 21, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. STANLEY OLIVER GOREE, Defendant and Appellant.

Douglas L. Glaser, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Raymond M. Momboisse and Theodore T. N. Slocum, Deputy Attorneys General, for Plaintiff and Respondent.

KAUS, J.—A jury convicted defendant on one count of selling, furnishing and giving away marijuana. (Health & Saf. Code, § 11531.) He appeals, his sole contention on appeal being that the trial judge erred in refusing to instruct the jury on the defense of entrapment.

The facts of the case are simple enough: Officer Hall of the Los Angeles Police Department, working in plain clothes and on an undercover assignment entered a poolroom at 10:30 a.m. on May 27, 1964. He had never seen defendant before, nor was defendant under investigation. Sometime thereafter defendant came in and asked Hall to shoot a game of pool. When the first game was over Hall asked defendant to shoot another game. Defendant declined, saying he only had 50 cents and needed it for a "thing."[1] Hall asked defendant

---

[1] There is evidence that in narcotic usage the term "thing" means a marijuana cigarette.

whether he could get him "one of those things." Defendant said: "You're not police are you?" Hall: "No, man you know better than that. I am not the man."

Hall gave defendant $3.00. Defendant again expressed the hope that Hall was not a policeman, left for 15 minutes and returned with six marijuana cigarettes. He again said: "Man, I hope you ain't the police because my cousin got busted just like this once."

He then gave the cigarettes to Hall, who next saw defendant in the county jail in July of 1964. The record does not show for what offense defendant was then under arrest.

The only question before us is whether an instruction on the doctrine of entrapment should have been given, not whether entrapment was proved as a matter of law.

Unquestionably the People have a strong argument that there was no entrapment as far as the lesser included offense of possession of marijuana is concerned. (Health & Saf. Code, § 11530.) ▇ The evidence showed clearly that without urging by Hall defendant intended to buy a "thing" for himself. The criminal intent to possess did not originate with the officer. On the other hand defendant was convicted of the much more serious offense of selling or furnishing marijuana. A first offender under Health and Safety Code, section 11531 is punishable by imprisonment from five years to life and, if so punished, is not eligible for release for three years. On the other hand a first offender under section 11530 is punishable "for not less than one year nor more than ten years" and eligible for release after one year in prison. The question therefore is whether there was any evidence of entrapment concerning the element of the offense of which defendant was convicted which is not a part of the acts prohibited by section 11530 and for which, if the judgment is affirmed, he must serve at least two additional years in prison.

The doctrine of entrapment was elaborately discussed by the Supreme Court in *People* v. *Benford,* 53 Cal.2d 1 [345 P.2d 928]. The facts of that case are tantalizingly similar to the facts before us. There, as here, an undercover officer struck up a friendship with defendant, suggested the purchase of marijuana and gave money to the defendant who thereafter appeared with 43 grams of the narcotic. There, as here, no particular pressure was exerted on defendant[2] and defendant made no money from the transaction. Unfortunately, how-

---

[2]In *Benford* defense testimony which tended to show repeated requests and appeals to sympathy was rejected by the trial court. The case was tried without a jury.

ever, the legal problem presented in *Benford* was quite different from the one before us. There the only question was whether the evidence showed entrapment as a matter of law, here it is whether there was sufficient evidence of entrapment to submit the question to the jury. At no point in *Benford* does the Supreme Court say that there was no evidence of entrapment even if all the defense testimony pointing in that direction is disregarded.

*Benford* also reenunciates the rule that the availability of entrapment as a defense depends upon whether the intent to commit the crime originated in the mind of defendant or in the mind of the policeman. (*People* v. *Benford, supra,* p. 10.) In this state, however, we do not admit independent evidence of past criminal involvement to prove where the intent originated.[3] In many cases the conclusion that the policeman has merely afforded an opportunity for the commission of an offense and has not entrapped an innocent defendant is reached by proof that the defendant is regularly engaged in committing the prohibited acts. Evidence of such regularity is often quite circumstantial. The readiness with which the defendant commits the crime charged is often most probative. The Supreme Court cites four cases of this type: *People* v. *Ramos,* 146 Cal.App.2d 110 [303 P.2d 783] ; *People* v. *Cau-*

[3]In this respect our California law seems to be a compromise between the two formulations of the doctrine of entrapment which have divided the Supreme Court of the United States. (*Sorrells* v. *United States,* 287 U.S. 435 [53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249] ;*Sherman* v. *United States,* 356 U.S. 369 [78 S.Ct. 819, 2 L.Ed.2d 848] ; see A.L.I.: Model Penal Code, Tentative Draft No. 9, Comments to § 2.10.) In both *Sorrells* and *Sherman* the majority opinion looked to the defendant's character as well as to the misconduct of the police, while the minority opinions, written by Justices Roberts and Frankfurter respectively, would ignore the defendant's character and consider the defense of entrapment as established, regardless of a particular defendant's predisposition, if the behavior of the police was such as to create a risk of luring innocent persons into crime. The majority pursues its concept of the defense to its logical conclusion and would permit independent evidence, not otherwise admissible, to show the defendant's character. Since we do not follow this view, inevitably in our California cases the evidence as to the police conduct is usually most explicit while the fact finder's assessment of the defendant's character must be made from evidence which has found its way into the record by some other legitimate route. It is worth noting that if we were to apply the minority formulation of the United States Supreme Court, there would indeed be no evidence of entrapment in the case at bench. Officer Hall's conduct, viewed objectively, was not shocking when we consider the methods of detection necessary to apprehend those in the narcotics trade, where few victims ever complain to the police. On the other hand, under the majority reasoning that entrapment is established where the crime is the result of the ''creative activity'' of the police, permissible police conduct varies according to the degree of predisposition of the defendant.

*dillo,* 138 Cal.App.2d 183 [291 P.2d 191]; *People* v. *Neal,* 120 Cal.App.2d 329 [261 P.2d 13] and *People* v. *Branch,* 119 Cal.App.2d 490 [260 P.2d 27]. These four cases, which are fairly representative of a large number of similar ones merely prove, in our view, that a finding that Goree was not entrapped would be supported by the evidence, but they do not compel it.

Thus in *People* v. *Ramos, supra,* an informer in the company of an undercover officer telephoned defendant. Nothing was said about narcotics. Defendant showed up 10 minutes later. The informer asked him whether he had the "stuff." Defendant replied in the affirmative and after some hesitation handed the informer 10 capsules of heroin. At the trial defendant offered testimony of strong persuasion by the informer. In affirming the conviction the appellate court merely held that the resolution of the factual conflict was for the trial court and that, since defendant arrived with narcotics without anybody ever having said anything about drugs, an inference arose that the officer and the informer merely provided "the occasion for one engaged in illegal activities to ply his trade."

It seems important to us to note that the readiness with which the defendant in *Ramos* furnished the narcotics did not, in the court's view, in itself destroy the theory of entrapment. It was, rather, the legitimate inference, under all of the circumstances of the case, that the readiness implied that defendant was regularly engaged in illegal activities and that the informer's request merely gave him an opportunity to "ply his trade."

However despicable and illegal it may be, the sale of narcotics is often conducted as a trade and persons engage in it on a more or less regular basis. As the Supreme Court points out in *Benford* the very fact that the offense is one of a kind habitually committed is one of the circumstances which may lead one to arrive at the conclusion that a defendant was regularly engaged in lawless activity. (*People* v. *Benford,* 53 Cal.2d 1, 12 [345 P.2d 928].) Furnishing narcotics as a social favor, however, is not a trade.

The other three cases cited by the Supreme Court for the proposition that the readiness with which a defendant commits the crime charged, *People* v. *Caudillo,* 138 Cal.App.2d 183 [291 P.2d 191]; *People* v. *Neal,* 120 Cal.App.2d 329 [261 P.2d 13] and *People* v. *Branch,* 119 Cal.App.2d 490 [260 P.2d 27], all are more or less similar on their facts and in each the only question on appeal was whether entrapment was shown as a matter of law. These and a veritable host of similar cases (6B McK. Dig., Criminal Law, § 50) are readily distinguish-

able from the case before us for the two reasons alluded to: 1. the question on appeal was not merely, as it is here, whether there was substantial evidence of entrapment and whether an instruction on the doctrine should have been given; and 2. the facts surrounding the sales in question permitted an inference of regularity.[4]

Discussing these two bases of distinction further, the following observations seem proper: it must be recognized that many decisions which hold that under the circumstances of the particular case entrapment was not shown as a matter of law, go further and contain statements to the effect that there was no substantial evidence of entrapment. Thus in *People* v. *Hutcherson,* 197 Cal.App.2d 771 [17 Cal.Rptr. 636], this court said: "The fact that an informer solicited the appellant to furnish marijuana would not alone give rise to an inference of entrapment." (*Ibid.,* p. 780.) In making this statement we relied on *People* v. *Richardson,* 152 Cal.App.2d 310, 318 [313 P.2d 651] which in turn cited *People* v. *Evans,* 134 Cal.App.2d 733, 737 [286 P.2d 368], which indeed is a case involving the question of whether instructions on entrapment should have been given rather than whether the defense was proved as a matter of law. But in *Evans* the evidence disclosed far more than mere solicitation by an informer. It showed on the defendant's own admission that he was deeply involved in the narcotics traffic.

Similarly we often find the statement in cases of this type that where no more pressure is brought to bear on the defendant than is necessary in the course of an ordinary sale, there is no entrapment. (*People* v. *Braddock,* 41 Cal.2d 794, 802 [264 P.2d 521]; *People* v. *Harris,* 213 Cal.App.2d 365, 369 [28 Cal.Rptr. 766]; *People* v. *Hutcherson, supra,* p. 780; *People* v. *Lindsey,* 91 Cal.App.2d 914, 917 [205 P.2d 1114]; *People* v. *Heusers,* 58 Cal.App. 103 [207 P. 908]; *People* v. *Barkdoll,* 36 Cal.App. 25 [171 P. 440].) The last cited case, *People* v. *Barkdoll,* appears to be the earliest decision in our

---

[4]Several cases which found a defendant's reliance on the doctrine of entrapment to be unavailing, were also based on the former rule that in order to invoke the defense the defendant must admit guilt. These cases were disapproved in *People* v. *Perez,* 62 Cal.2d 769, 776, fn. 2 [44 Cal. Rptr. 326, 401 P.2d 934]. We do not mean to imply that no case has held that on superficially similar facts defendant is not entitled to entrapment instructions. *People* v. *Finn,* 136 Cal.App.2d 152 [288 P.2d 281]; *People* v. *Evans,* 134 Cal.App.2d 733 [286 P.2d 368]; and *People* v. *Alamillo,* 113 Cal.App.2d 617 [248 P.2d 421] are among such decisions. We do not differ with the conclusions reached in these and other cases which involved standard narcotics transactions. For reasons which we shall explain, the case at bench represents a different legal problem.

state announcing the rule and there again, the question before the court was whether entrapment was shown as a matter of law, not whether an instruction was required.

There is no need to belabor the point. Statements made which go beyond the question which is before a court are dicta and not binding as precedent. (*Windsor* v. *Windsor,* 42 Cal.App.2d 464, 466 [109 P.2d 363].)

It seems obvious that each case in which a defendant claims entrapment and requests an instruction on the doctrine must rest on its own facts. What distinguishes the present case from those to which our attention has been drawn and many others which we have examined is that the jury, on the evidence, was certainly entitled to believe that defendant had nothing to do with the narcotics traffic except as a user and that his furnishing marijuana to the officer was an isolated act not intended or designed by him until suggested by the officer. True, defendant's hairtrigger susceptibility made it easy for Hall, but we do not understand the law to be that this alone negatives entrapment as a matter of law. In *People* v. *Sweeney,* 55 Cal.2d 27 [9 Cal.Rptr. 793, 357 P.2d 1049], defendant, an attorney, was strongly suspected of having furnished a narcotic to a patient at the Los Angeles County General Hospital. Although detained at the hospital he was released by Deputy Nichols, pending an analysis of the substance he had been seen handing to the patient. Later on the same day Nichols got in touch with defendant at a restaurant. After discussing defendant's predicament the officer, who had searched his Lincoln automobile earlier in the day, suddenly said: "It sure is a beautiful automobile." Immediately defendant said: "I would sure like to see you driving it." They then discussed the amount of the bribe. Defendant later gave Nichols $500 and was convicted of bribery. (Pen. Code, § 67.) The issue of entrapment had been tried to the jury. The Supreme Court held that the jury could have inferred that when Nichols made his remark about defendant's automobile he had no intention of soliciting a bribe and that the intention to offer a bribe was formed in defendant's mind.[5] Implicit in this holding is the premise that if Nichols' intention had been to solicit a bribe, a finding of entrapment would have been justified. Yet, Sweeney's antenna was at least as sensitive as Goree's.

It appears therefore that susceptibility to suggestion,

---

[5]Justice White dissented. He felt that entrapment was proved as a matter of law.

standing alone, does not negative entrapment as a matter of law. The crucial issues are preexisting criminal intent or design, not susceptibility.[6] If it were otherwise we would find it impossible to reconcile two leading entrapment cases of doctors accused of abortion—*People* v. *Ballard,* 167 Cal.App. 2d 803, 821 [335 P.2d 204] and *People* v. *Reed,* 128 Cal.App. 2d 499, 502 [275 P.2d 633]—with the profusion of narcotics cases. The facts in *Ballard* and *Reed* were similar. In each case a police decoy posing as a pregnant woman asked the defendant for an abortion. Defendant prepared her for the operation and, when arrested, was on the verge of starting it. In each case it was held to be reversible error not to instruct on entrapment. As far as susceptibility is concerned it is difficult to see the difference between the two physicians and the host of narcotics peddlers who have vainly relied on entrapment as a defense. The solution, we believe, lies in this: in these abortion cases there is nothing, apart from the doctor's susceptibility, from which regularity or preexisting design can be inferred. The availability of instruments and other paraphernalia necessary for the abortion is a neutral factor since they are only such as one would expect to find in an obstetrician's establishment and, in any event, not all abortions are illegal. But when we move from the operating room to the street corner on skid row, the extrinsic circumstances become suspect: the readiness with which the solicited defendant is able to supply the demand, the repeated sales to the same officer or informer, all point to regularity and preexisting illegal design.

It seems to us that legally the present case is closer to *Ballard* and *Reed,* than to the standard narcotics case for the following reason—always keeping in mind that what we are discussing is the element of "furnishing" only: Goree was going to get himself a "thing" anyway. Obviously he knew where to obtain it. Therefore, the readiness with which he complied with the officer's request is as consistent with a lack of preexisting design as it is with regularity and evil intent for which the officer merely furnished an opportunity. Of course, which inference to draw was for the jury. In view of *People* v. *Benford, supra,* we cannot say that the defense

[6] "This rationale throws the main emphasis on the 'predisposition' of the accused to commit the crime. We take it that 'predisposition' means something more than 'disposition' and is intended to refer to the character and intentions of the accused as an 'unwary innocent' (if the conviction is reversed) or as an 'unwary criminal' (if conviction is affirmed)." (*Accardi* v. *United States,* 257 F.2d 168, 171.)

was conclusively proved. But Goree's only complaint here, and we think it is a legitimate one, is that the jury was given no opportunity to exercise its function.

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied March 11, 1966, and respondent's petition for a hearing by the Supreme Court was denied April 22, 1966. Mosk, J., was of the opinion that the petition should be granted.