[Crim. No. 12546. Second Dist., Div. One. May 8, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GODFREY JOSEPH BARONE, Defendant and Appellant.

Godfrey Joseph Barone, in pro. per., and Eugene A. Rudolph, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip G. Samovar, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of four counts of selling heroin (Health & Saf. Code, § 11501), and allegations that he suffered two prior convictions were found to be true; he appeals from the judgment.

On August 20, 1965, undercover narcotics Officer Rudy Limas and an informant named Joe met defendant at Third and Hill Streets. Joe said to defendant, "I have been looking for you"; defendant answered, "Let me borrow your kit," to which Joe replied, "He [Officer Limas] has got one, . . . but his buddy has it and he is somewhere around here. Come on and I will help you find him." Defendant said, "But I need it right now. Give me a kit and I will give you half of these," and opened his mouth showing Officer Limas six to ten balloons inside. Joe then said, "Well, we want a half right now," and told Officer Limas, "Give your money to him [defendant]." The officer handed defendant a $10 bill

and defendant handed him one blue balloon containing heroin which he took from his mouth.

Five days later Officer Limas alone met defendant at Fourth and Main Streets and said to him, ''Hey, have you got anything today?'' Defendant replied, ''Walk over to Main,'' then, ''Where have I seen you before''; the officer replied, ''Don't you remember? I scored from you the other day when I was with Joe''; then the officer said, ''Well, have you got anything or not, because I have to go''; defendant replied, ''Yes, I have some,'' whereupon the officer handed him a $10 bill for which defendant handed him one yellow balloon containing heroin which he took from his mouth.

On August 26, Officer Limas and Joe met defendant on West Third Street; Joe said to defendant, ''Hey, have you got anything today?''; defendant made a sign with his head meaning yes, and Joe told him to ''get it right away.'' The officer moved closer to defendant and told him, ''Give me a half,'' handing him a $10 bill for which defendant handed him a yellow balloon containing heroin which he took from his mouth

On August 30, the officer and Joe met defendant at Fourth and Hill Streets; Joe asked defendant, ''Pass over a half.'' Joe told the officer to give defendant the money. Officer Limas got close to defendant and said, ''Give me a half'' and handed him a $10 bill. Defendant instructed him to ''Put out your hand.'' He did so and defendant dropped a balloon containing heroin from his mouth into the officer's hand.

Appellant's main contention is that the People's failure to produce Joe as a witness constituted a violation of his rights of confrontation and due process, relying upon *People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19]; *People* v. *Kiihoa,* 53 Cal.2d 748 [349 P.2d 673]; and *People* v. *Durazo,* 52 Cal.2d 354 [340 P.2d 594, 76 A.L.R.2d 257]. The instant case is not factually similar to *Williams, Kiihoa* or *Durazo.* In *People* v. *Kiihoa,* 53 Cal.2d 748 [349 P.2d 673], the prosecution was deliberately withheld while the informer was available, and the cause proceeded to trial only after the witness had left the jurisdiction. The court found that ''the deprivation of due process was admittedly occasioned by state action.'' (P. 754.) In *People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19], the officer refused to disclose the identity of the informer; so too in *People* v. *Durazo,* 52 Cal.2d 354 [340 P.2d 594, 76 A.L.R.2d 257], the officer claimed the privilege of nondisclosure. In the case at bar, there was neither a deliberate delay of the trial

until the informant had left the jurisdiction or any other state action depriving the accused of due process, nor a refusal to disclose his identity; and as said in *People* v. *Kiihoa,* 53 Cal.2d 748 [349 P.2d 673], "It is not intended to hold that the mere unavailability of a material witness would necessarily result in a denial of due process in every case." (P. 754.)

Officer Limas testified on cross-examination at the preliminary hearing that Joe is the only name by which he knew the informer whom he had met for the first time on July 19, 1965; during the time he knew Joe he would "run into him" numerous times around the market area; his superior officer, Lieutenant Guindon, Narcotic Division, gave him money to give to Joe whenever Joe went with him and participated in a sale, and kept track of the money on a piece of paper, a calendar and a book, but Lieutenant Guindon's notations consisted only of the amount of money given and the officer's name and did not state Joe's full name. Through a series of discovery proceedings had prior to trial, defendant was given the following information under oath by Officer Barber: prior to the buy program instituted in August 1965 by the police department he knew an informer by the name of Joe; Joe contacted him under the name of Carlos—"I believe his name to be Carlos Morales"—although he was not certain of the last name; in June or July 1965, he introduced him to Officer Limas by the name of Joe who went with him on the street under that name; he had known Carlos Morales about six weeks; originally Morales came to the narcotic office on his own volition and was known to be a narcotic user; to his knowledge Morales has not been, nor has he seen him, in police custody; at the time he introduced Carlos Morales to Officer Limas, the former was living at the Northern Hotel, Second and Hill Streets, Los Angeles; he does not have a mug photograph of Morales, nor does he know whether he has ever been on probation or parole. Defense counsel subpoenaed Officer Dorrell in connection with other arrests but Officer Dorrell testified that he knew no one by the name of Carlos Morales, Joe, or Crazy Joe, and to his knowledge this person had not been involved in the arrest of any of the persons about whom he was questioned.

There is no showing that the prosecution refused to disclose the identity of the informant or that any state action deprived the defendant of identifying or locating him; to the contrary, the record shows that the prosecution cooperated in

the disclosure of all information concerning the informant possessed by the officers. The fact is that they knew very little about him. Moreover, defense counsel conceded in the trial court that his pretrial investigation failed to show "that the People are secreting this witness." He also advised the court that Sergeant Barber told him that he indicated to the informant at the end of the buy program that they would not need him as a witness, but the record does not show this; nor does the evidence establish that the prosecution encouraged him to disappear.

 " 'Yet the cases have uniformly held that in the void of specific testimony that the police encouraged the informer to disappear [as was the case in *Kiihoa*], the courts cannot infer improper motives or activities on the part of the officers, but must presume that the officers regularly and lawfully performed their duties (*People* v. *Farrara*, 46 Cal.2d 265 [294 P.2d 21]), as well as that the payment for and termination of an informer's employment is not in and of itself "encouraging him to disappear." (*People* v. *Wilburn* 199 Cal.App.2d 47, 56 [18 Cal.Rptr. 452], *supra*.)' " (*People* v. *Galvan*, 208 Cal.App.2d 443, 448 [25 Cal.Rptr. 128]; *People* v. *Sauceda*, 199 Cal.App.2d 47, 56 [18 Cal.Rptr. 452].)

 While the People did not call the informant, they are "not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. (*People* v. *Tuthill*, 31 Cal.2d 92, 98 [187 P.2d 16]; *People* v. *Parry*, 105 Cal.App.2d 319 [232 P.2d 899].)" (*People* v. *Kiihoa*, 53 Cal.2d 748, 752 [349 P.2d 673]; *People* v. *Fontaine*, 237 Cal.App.2d 320, 327 [46 Cal.Rptr. 855].) In *People* v. *Alexander*, 168 Cal.App.2d 753 [336 P.2d 565], defendant, as here, received what appeared to be all of the information concerning the informant possessed by the prosecution and was afforded time and initial discovery for the purpose of locating him; on appeal he asserted the right to compel the prosecutor to locate and produce the witness at the trial. In rejecting his proposition the court held that it would be an unreasonable extension of the informer doctrine, and such a rule does not and should not exist (p. 755). Inasmuch as the prosecution is required to neither call an informant as part of its case nor produce the informer as a witness, "Under the same reasoning, it has been held that the absence of the informer-participant as a witness does not violate the accused's right of confrontation (*Dear*

*Check Quong* v. *United States,* 160 F.2d 251." (*People* v. *Castedy,* 194 Cal.App.2d 763, 769 [15 Cal.Rptr. 413], cert. den. 369 U.S. 825 [7 L.Ed.2d 790, 82 S.Ct. 841].) Thus, in the absence of any showing that the prosecution prevented defendant from locating the informer or deliberately refused to identify him or cooperate in finding the witness, it cannot be successfully contended that he was denied the right of confrontation. (*People* v. *Kühoa,* 53 Cal.2d 748, 752 [349 P.2d 673].)

Appellant's remaining contention that the conduct of the arresting officer constituted entrapment as a matter of law, is also without merit. The only conduct to which he points as constituting entrapment is that of the informer as the agent of Officer Limas, and Officer Limas—''On August 20th, 1965, Officer Limas met with the informer named Joe and they soon thereafter met with appellant. Joe approached the appellant and engaged him in conversation which led to the buying of heroin from appellant.'' Appellant argues that, ''This was the first time that Officer Limas had ever seen appellant. Such conduct by the informer as the agent of Officer Limas and of Officer Limas constituted entrapment. It is clear that Officer Limas initiated the conversation and the transaction was more than just a willing buyer''; further, that having never before met him there was no reason to believe that he was willing to sell narcotics to the officer, and the fact that he proved to be susceptible to the officer's offer does not negate entrapment, citing *People* v. *Goree,* 240 Cal.App.2d 304 [49 Cal.Rptr. 392].

An examination of *Goree* reveals that the question there was whether there was sufficient evidence of entrapment to submit the issue to the jury, not whether the evidence showed entrapment as a matter of law. The record herein shows that there was not even a factual question of entrapment. There is no indication that defendant did not have a preexisting intention to sell narcotics to Officer Limas. To the contrary, the evidence establishes that in each instance defendant gave the officer the narcotic immediately upon his receipt of the money, and that at all times defendant had the heroin in a condition ready for sale in his possession and on his person. In connection with the first sale, the officer saw six to ten balloons of heroin in defendant's mouth. This fails to support any defense of entrapment—that the criminal design originated not in the mind of the defendant but in the mind of the officer and his informer; in fact, on each occasion, at the very time

the officer negotiated with defendant for the sale of the narcotic, defendant was then committing a felony in that he had heroin in his possession in his mouth. At most, Officer Limas offered defendant an opportunity to sell him the narcotic he had on his person ready for sale. The burden of proving the affirmative defense of entrapment is on the accused and he must show that he was induced to commit the crime of which he is charged. (*People* v. *Harris,* 213 Cal.App.2d 365, 368 [28 Cal.Rptr. 766] ; *People* v. *Hicks,* 222 Cal.App.2d 265, 270 [35 Cal.Rptr. 149].) As to entrapment as a matter of law, it ''is not established where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused.'' (*People* v. *Terry,* 44 Cal.2d 371, 372-373 [282 P.2d 19] ; *People* v. *Harris,* 213 Cal.App.2d 365, 368 [28 Cal.Rptr. 766].)

If the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity to commit the crime was furnished, or that the accused was aided in the commission of a crime in order to secure the necessary evidence to prosecute him therefor, constitutes no defense. '' 'If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment.' '' (*People* v. *Braddock,* 41 Cal.2d 794, 802 [264 P.2d 521] ; *People* v. *Harris,* 213 Cal.App.2d 365, 369 [28 Cal.Rptr. 766].) To constitute entrapment the accused must be induced by the officer to commit a crime which he would not otherwise have committed. (*People* v. *Hicks,* 222 Cal.App.2d 265, 270 [35 Cal. Rptr. 149]; *People* v. *Burnett,* 204 Cal.App.2d 453, 456 [22 Cal.Rptr. 320].

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 31, 1967, and appellant's petition for a hearing by the Supreme Court was denied July 5, 1967.