[Crim. No. 5533. Second Dist., Div. Two. Apr. 30, 1956.]

THE PEOPLE, Respondent, v. ARTHUR LAWRENCE CUMMINGS, Appellant.

A. Brigham Rose for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, J.—A jury found defendant guilty of an attempt to commit an abortion. He appeals from the judgment[1] and order denying his motion for a new trial.

For some years prior to December, 1954, defendant was a duly licensed physician and surgeon and maintained offices in Burbank, California. On December 13, 1954, C. A. Mead, an investigator for the State Board of Medical Examiners, and a Miss Robinson, who worked with him, called on defendant at his office. Miss Robinson advised the doctor that she thought she was pregnant, although she knew she was not. Defendant inquired why she did not get married. Mead stated that he was already married. Defendant examined Miss Robinson and told her she was definitely pregnant. Miss Robinson acted perturbed and Mead remarked that they were really in trouble. Defendant then said, ''Well, what you want is an abortion.'' They said they did and inquired about the cost. Defendant told them it would be $500. Miss Robinson stated that the friend who had referred her had paid $150.

___

[1]Defendant was granted probation but under section 1237, Penal Code, an order granting probation is deemed to be a final judgment for purposes of appeal.

Mead said that he could not raise $500. Defendant thereupon asked him whether he could raise $300. Mead said he could but it would take a few days. Defendant inquired whether he could raise it by Friday. Mead stated that he thought he could. Defendant then told them to get the money and return about 8 o'clock Friday night, and when they saw the lights go out, to enter. On the way out, Mead paid a $3.00 fee for the examination, receiving a receipt therefor from the woman in the outer office.

Mead and Miss Robinson returned to defendant's office at the appointed time the following Friday night; they could not see any lights on; a nurse in the office told them defendant was not there, and asked them to wait. They waited outside until defendant arrived. He took them into the surgery room, where he asked who had the money. Mead gave him $300 in bills which defendant put in his pocket. Defendant told Miss Robinson to take off her lower clothing and gave her a sheet. She removed her clothes and got onto a table, where she put her feet in stirrups. At the front of the table was a shelf containing a basin, towel, bowls, gauze pads, rubber gloves, and instruments. Defendant dipped a gauze pad into a green solution and rubbed Miss Robinson's private parts with it. He then dipped another pad into a pink liquid, told Miss Robinson that it would sting, and wiped her vagina with it. He inserted a vaginal speculum into her vaginal tract. Mead asked defendant, "Are you going to use a tube on her, or what are you going to do." Defendant replied, "No, I'm going to scrape the uterus." Mead then inquired, "Will that cause her not to have a baby?" Defendant answered, "Well, that's the idea of the thing, yes."

Defendant picked up a curette and turned back toward Miss Robinson, remarking, "We'll get started now, and get this through." He started to bend forward, moving the curette toward Miss Robinson. When his hand was about to her knees, Mead arrested him. Either Miss Robinson or the nurse removed the speculum from Miss Robinson's person.

Miss Robinson retired to dress and to get Sergeant Vandegrift, who was outside of the office. Mead ordered defendant to take the money that he had given him out of his pocket and put it on the table. The doctor acknowledged he had accepted this money as payment for attempting to perform an abortion on Miss Robinson. Mead then went to the counter where the instruments were and picked up each one, asking the doctor, as he did so, whether that was an instrument he

was going to use in an attempt to perform an abortion on Miss Robinson. Defendant answered these inquiries in the affirmative. Mead wrapped the instruments in a towel and took them with him. They were introduced in evidence at the trial.

Sergeant Vandegrift indicated an intention to arrest Miss Heslep, defendant's nurse. She, however, disclaimed any knowledge that the doctor was going to perform an abortion that night. Defendant corroborated her statement by saying, "She didn't know what I was going to do tonight. I hadn't told her, and she doesn't know anything about it."

Before leaving the office, defendant told the officers he had been performing abortions since 1942 and that he had performed half a dozen or more during the past six months.

At the Burbank police station, defendant stated it was his opinion that Miss Robinson was pregnant and that he intended to perform an abortion on her that evening. When asked whether he wanted to call his attorney he gave a negative answer, adding, "I don't need one. I'm guilty."

At the trial it was defendant's position that he thought Miss Robinson had an ectopic or tubular pregnancy and so advised her; he did not intend to perform an abortion on her that night; he was going to take a biopsy and have it analyzed by the laboratory; if it showed decidual cells it would mean she was definitely pregnant, and in that case, if it was an ectopic pregnancy, she was to be hospitalized.

In seeking a reversal defendant contends:

*First,* that he may not be found guilty of an attempt to commit an abortion since the victim was not pregnant and an abortion was therefore impossible of accomplishment. He argues that such a conviction is contrary to law because it would make a criminal offense out of the *idea* of committing that which it is impossible to consummate. There is no merit in this point. Penal Code, section 274, provides: "Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years." Prior to the amendment of this section in 1935, an essential element of the crime was that the woman on whom the abortion was performed was in fact pregnant. (*People* v. *DeVaughan,* 105

Cal.App. 516, 518 [288 P. 113].) ▆ Since the amendment, proof of pregnancy has not been required to establish guilt of abortion, and the performing of any of the enumerated acts, believing that she is pregnant and intending to produce a miscarriage, constitutes the offense although the woman is not in fact pregnant. (*People* v. *Raffington*, 98 Cal.App.2d 455, 459-460 [220 P.2d 967]; *People* v. *Gallardo*, 41 Cal.2d 57, 68 [257 P.2d 29]; *People* v. *Green*, 111 Cal.App.2d 794, 799 [245 P.2d 526].) The elements of an attempt to commit an abortion are (1) a specific intent to commit the crime, and (2) a direct, unequivocal act done toward that end. (*People* v. *Gallardo, supra*; *People* v. *Bowlby*, 135 Cal.App.2d 519, 529 [287 P.2d 547].) ▆ Thus, the crime of attempted abortion is committed if one, believing that a woman is pregnant and intending to produce a miscarriage, does a direct, unequivocal act toward the consummation of a miscarriage. (*People* v. *Berger*, 131 Cal.App.2d 127, 129 [280 P.2d 136]; *People* v. *Raffington, supra*; *People* v. *Bowlby, supra*.) ▆ This is in harmony with the general rule that where there is an apparent ability to commit the crime in the way attempted, the attempt is indictable although, unbeknown to the person making the attempt, the crime cannot be committed because of the nonexistence of some extrinsic fact. (*People* v. *Siu*, 126 Cal. App.2d 41, 44 [271 P.2d 575]; *People* v. *Lanzit*, 70 Cal.App. 498, 508 [233 P. 816]; 22 C.J.S., 142, § 77.)

Defendant relies on *People* v. *Miller*, 2 Cal.2d 527 [42 P.2d 308]. That case, however, does not support his thesis. It stands for the proposition that preparation to commit a crime is not enough, but that some appreciable fragment of the crime must have been committed.

*Second,* that the evidence is insufficient to sustain the conviction. Defendant argues that the evidence fails to show that he (1) intended to perform an abortion, or (2) did any direct, unequivocal act toward the commission of the offense.

In passing on the sufficiency of the evidence to sustain a conviction it must be borne in mind that before a reversal may be had on that ground, "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. [Citation.] We must assume in support of the judgment the existence of every fact which the trial court could have reasonably deduced from the evidence, and then determine whether the facts 'justify the inference of guilt.' [Citation.] If the circumstances reasonably justify

the determination of the trier of fact, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant a reversal. [Citations.]'' (*People* v. *Frankfort,* 114 Cal.App.2d 680, 689 [251 P.2d 401].) ▇ Applying these principles to our factual situation, as herein recited, it is clear that the jury could reasonably infer that defendant believed Miss Robinson was pregnant, and that he intended to use the instruments and medicines at hand for the purpose of procuring a miscarriage. The jury could also reasonably conclude that defendant had completed his preparation and was in the process of performing direct, unequivocal acts which he thought would result in the miscarriage he intended to produce. Such implied factual findings on the part of the jury support the judgment of conviction. (*People* v. *Gallardo, supra,* p. 66; *People* v. *Berger, supra; People* v. *Bowlby, supra.*) In *People* v. *Raffington, supra, People* v. *Reed,* 128 Cal.App.2d 499 [275 P.2d 633], and *People* v. *Berger, supra,* acts of less positive significance than those in the instant case were held to constitute an attempt rather than mere preparation.

▇ Whether the story of the defendant, exculpating himself, was entitled to credence was for the determination of the triers of the facts. (*People* v. *Von Benson,* 38 Cal.App.2d 431, 434 [101 P.2d 527].) By their verdict the jury clearly indicated their disbelief of defendant's explanation of what took place on the evening of his arrest. By the same token it is obvious they believed the testimony of Mead, Miss Robinson and the police officers. Their testimony amply supports the verdict and judgment.

▇ *Third,* that the district attorney was guilty of prejudicial misconduct in the cross-examination of defendant's character witnesses. Defendant bases this point on the fact that the prosecutor asked the four doctors who testified to the good professional reputation of defendant whether they had heard that he had been performing abortions since 1942, and whether they had ever heard that he had committed an abortion, not necessary to preserve life, on a woman named McGrath in September or October, 1954, or on one named LeGrand on January 3, 1954.

The rule on this point is stated in *People* v. *McKenna,* 11 Cal.2d 327, 335-336 [79 P.2d 1065], as follows: ''In the absence of a showing of bad faith it is always within the scope of legitimate cross-examination to ask a character wit-

ness whether he has heard the person whose reputation is under investigation accused of conduct inconsistent with the character attributed to him by the witness." To the same effect, see *People* v. *Thompson,* 69 Cal.App.2d 80, 93-94 [158 P.2d 213], where defendant was charged with having committed an abortion and his character witness was cross-examined relative to reports of defendant's general reputation with regard to the practice of procuring abortions. Such cross-examination is proper for the purpose of testing the weight that should be given to the testimony of the witness on direct examination. (*People* v. *Stevens,* 5 Cal.2d 92, 99-100 [53 P.2d 133].)

There is no showing of bad faith on the part of the prosecutor in his cross-examination of defendant's character witnesses. There was evidence that defendant had admitted performing abortions since 1942 and to having performed a half dozen or more such operations within the six months' period prior to his arrest. Not without significance as bearing upon the prosecutor's good faith is Dr. Paul's answer to this question: "Did you ever hear that he [defendant] performed an abortion [in] September or October of 1954 on . . . McGrath that wasn't necessary to preserve her life?" Dr. Paul replied: "Well, I heard about the trial. I didn't hear that an abortion was done." Defendant's trial attorney[2] did not object to this line of interrogation on the ground that it was being pursued in bad faith and without factual basis. (See *People* v. *White,* 43 Cal.2d 740, 744 [278 P.2d 9].) ██ The presumption is that the prosecutor acted in good faith. (Code Civ. Proc., § 1963, subd. 15.) The question of the prosecutor's good faith may not, therefore, be raised for the first time on appeal.

██ Finally, the court instructed the jury as follows: "Questions and testimony in the cross-examination of a witness testifying to the general reputation of the defendant may be considered by the jury only for the purpose of testing the weight and worth of the testimony of such witness." This instruction properly limited the use by the jury of the matters gone into on cross-examination and eliminated any possible prejudice from that line of interrogation. (See *People* v. *Bentley,* 131 Cal.App.2d 687, 691-692 [281 P.2d 1].)

*Fourth,* that the trial court committed prejudicial error in refusing to instruct the jury on the subject of entrapment.

---

[2]Defendant has new counsel on appeal.

While it is well settled that a defendant is entitled to instructions based on the theory of his defense, the court may refuse proffered instructions on a theory that is not supported by substantial evidence. (*People* v. *Evans,* 134 Cal.App.2d 733, 736-737 [286 P.2d 368].) Was there substantial evidence of entrapment in this case? A few legal guideposts will assist in answering this question. In *People* v. *Braddock,* 41 Cal.2d 794, 802 [264 P.2d 521], the court had this to say on the subject of entrapment: ''The many decisions in this state which define the defense of entrapment were reviewed in *People* v. *Lindsey,* 91 Cal.App.2d 914 [205 P.2d 1114], and the law stated as follows: 'Where the doing of an act is a crime, regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. [Citations.] If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment.' (P. 917.) More recently it was held: 'It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment.' [Citations.]'' In *People* v. *Bowlby, supra,* (pp. 529-530), the court pointed out: ''It is essential to such a defense that the criminal intent originate with the one who is alleged to have entrapped defendant and that the crime be induced by him through persuasion or the like. His merely furnishing the occasion for one engaged in illegal activities to ply his trade does not amount to entrapment.''

Applying these principles to our factual situation, it is clear there is no substantial evidence of entrapment. Certainly there was no foundation for such a defense in the defendant's testimony for he denied that he had any intention of committing an abortion on Miss Robinson. His defense was that he intended only to do a biopsy for diagnostic purposes, and that his acts were directed to that end.

The testimony of Mead and Miss Robinson likewise fails to lay a foundation for the defense of entrapment. It does

not appear that either of them ever asked defendant to perform an abortion on her. In fact, the evidence discloses that it was defendant who first suggested it. Mead and Miss Robinson simply furnished defendant "an opportunity" to commit the offense. There is no indication that they used any persuasion in order to get the defendant to undertake this illegal operation. The inference is clear that defendant was ready and willing to undertake the operation just as soon as Mead could raise the money for his fee.

Since there was no substantial evidence of entrapment it was not error to refuse to instruct the jury on that subject. (*People* v. *Braddock, supra*; *People* v. *Alamillo,* 113 Cal. App.2d 617, 620-621 [248 P.2d 421] ; *People* v. *Evans, supra*; *People* v. *Bowlby, supra.*)

Defendant relies on *People* v. *Reed,* 128 Cal.App.2d 499, [275 P.2d 633], and *People* v. *West,* 139 Cal.App.2d Supp. 923 [293 P.2d 166], in support of his contention that the court should have instructed the jury on the question of entrapment. Both of these cases are factually distinguishable. Neither is applicable here. In the Reed case, a policewoman told defendant that she was pregnant and that she wanted him to perform an abortion. He agreed to do so and started the operation. It does not appear that he ever denied that he intended to perform it. Thus, the jury there might have drawn the inference that the doctor was induced to perform the operation by the persuasion of the investigator, whose idea it was. Hence defendant Reed was entitled to have the jury advised on the subject of entrapment. In the West case, defendant's "testimony tended to show that the procuring scheme originated with the officer, that she resisted constant pressure from the officer for over a month to procure a prostitute for him, and that she yielded to the officer's insistence only in an effort to get rid of him." In such state of the record defendant was entitled to have the defense of entrapment considered by the jury under proper instructions.

*Fifth,* that the court prejudicially erred by failing to instruct the jury "concerning the right of a doctor of medicine to possess the instruments claimed to have been used in the attempted abortion."

The instruments introduced in evidence in the instant case were those which Mead specifically asked defendant whether he was going to use to perform an abortion upon Miss Robinson, and he answered in the affirmative. There was testimony

that defendant used or started to use some of these instruments. He had no right to use the instruments, which he identified, to commit an illegal abortion. No reliance is placed at any point on defendant's mere possession of them. The significant fact here is the *use* that defendant was making, and said he intended to make, of these instruments and not his mere possession. The situation here is distinguishable from those cases where instruments capable of being used to perform an abortion are found in a doctor's office and are introduced in evidence to show that he had the means available to perform the abortion as corroborative evidence of the offense. In such circumstances and since the procurement of an abortion is permissible under certain conditions (Pen. Code, § 274), it has been held proper to instruct the jury that the defendant doctor was lawfully entitled to have such instruments in his possession. (*People* v. *Murphy*, 60 Cal. App.2d 762, 771 [141 P.2d 755].) But where, as here, the significant factor is not the circumstance that the doctor had possession of the instruments but rather the showing of his engagement in an actual and intended illicit use of them, it is not error to fail to instruct the jury that defendant had a right to possess such instruments.

*Sixth,* that the court erred in failing to give his proposed instructions as to the elements of an attempt to commit an abortion. Examination of the instructions discloses that the jury was fully and accurately advised as to the elements of the offense of which defendant was found guilty. The instructions that were given placed upon the jury the duty and necessity, before they could find the defendant guilty, of finding that he intended to perform an abortion on Miss Robinson and did a direct, unequivocal act toward that end. They completely covered the contents of the instructions proposed on behalf of defendant. Therefore the court was not required to give the latter. (*People* v. *Roche,* 68 Cal.App.2d 665, 668 [157 P.2d 440].)

*Seventh,* that the court abused its discretion in denying the motion for a new trial. Defendant points out that it is the duty of the trial court, on a motion for a new trial, to reevaluate the evidence. (*People* v. *Robarge,* 41 Cal.2d 628 [262 P.2d 14].) He makes no showing, however, that the trial judge did not properly perform this duty. The presumption is that he did. (Code Civ. Proc., § 1963, subd. 15.)

We find nothing in the record to indicate that the defendant did not have a fair trial.

The judgment and order are affirmed.

Moore, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 29, 1956. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.